669 P.2d 1349

Dale Michael **NELSON**, Petitioner,

v.

The Honorable Richard N. **ROYLSTON**, Judge of the Pima County Superior Court, Respondent,

**STATE of Arizona**, Real Party in Interest.

No. 2 CA–CIV 4863.

Court of Appeals of Arizona, Division 2.

Aug. 15, 1983.

Hirsh & Fines, P.C. by Robert J. Hirsh and L. Anthony Fines, Tucson, for petitioner.

Stephen D. Neely, Pima County Atty. by Cindy Kelly Jorgenson, Tucson, for real party in interest.

## OPINION

BIRDSALL, Acting Chief Judge.

Petitioner has brought this special action to challenge the respondent court's denial of his motion to dismiss the indictment and to remand for a redetermination of probable cause. Because we believe the court abused its discretion in denying the motion, and because the petitioner is without an adequate remedy by means of an appeal, *State v. Agnew,* 132 Ariz. 567, 647 P.2d 1165 (App.1982), we assume jurisdiction and grant relief.

Petitioner was indicted by the Pima County Grand Jury on one count of kidnapping in violation of A.R.S. § 13–1304. Ms. Vella Hermann, the chief investigating officer in the case, presented the evidence to the grand jury that on November 30, 1982, petitioner was observed grabbing a woman around the neck and waist, apparently forcing her to walk with him. The incident was observed by a young man and woman seated in a nearby car. The man exited the car, chased the petitioner and eventually sub-

dued him. At the time of the incident, the petitioner was on probation for two rapes which occurred in 1974. He was in the middle of probation revocation proceedings that were initiated after he was accused of attempted robbery in Las Vegas in January 1982. After the incident involved in the instant case, probation revocation proceedings were brought against him on that basis also.

The transcript of the grand jury proceedings shows that after petitioner was arrested, he was read his *Miranda* rights and he stated he wanted to speak to his attorney and his psychiatrist. A grand juror thereupon asked the witness whether petitioner was under psychiatric care during the time of the alleged offense and the following transpired:

"GRAND JUROR ROMERO: Romero. Was he under psychiatric care at the time?

THE WITNESS: He stated he had a psychiatrist that he wanted to talk to.

GRAND JUROR ROMERO: Was it proven that he was under a doctor's care?

MS. JORGENSON: (Prosecutor) Perhaps I could interject. I don't think that particular line of questioning is relevant to this particular offense.

GRAND JUROR MADDUX: Maddux. I would be interested in the same question because it may shed some light on his state of mind as to whether he was knowingly—the culpable mental state.

MS. JORGENSON: Fine. If you want to specifically ask about one of the elements of the offense, of course, you're free to do that.

GRAND JUROR MADDUX: Well—Maddux. All right. In your opinion, what was his culpable mental state, and do you have any information on whether any medical treatment he was receiving at the time would shed any light on that?

THE WITNESS: In my opinion, his mental state could only be indicated by the statements he made.

The statement he made to Mark was yes, he knew what he had done. He had attacked somebody. He also made the statement he was presently awaiting on charges for attacking somebody else.

There were the statements he made to Mark at the time he tackled him. The statement he made was: I'm doing this for a friend as a prank. He made an excuse.

Also the statement he made to his wife over the phone that he had messed up. He was at the Police Department. He grabbed somebody.

GRAND JUROR MADDUX: Maddux again. Is there anything you learned that would indicate that he was out of touch with reality at the time of the offense?

THE WITNESS: Nothing that I have learned that I could make a statement on. In my opinion, no, sir."

Prior to giving this testimony, Officer Hermann had been present in the courtroom during the probation revocation proceedings based on the same incident that gave rise to this case when the following occurred:

"THE COURT: Do you have any additional witnesses?

MS. JORGENSON: No, Your Honor. State rests.

THE COURT: Mr. Hirsh, (petitioner's counsel) State having rested do you wish to present any evidence?

MR. HIRSH: Yes, I have a witness which would be Dr. Morris who would testify that this was an involuntary compelled act and an act that would, as I had mentioned to the Court earlier, going to refer the Court to A.R.S. 12–201 and 13–201 says minimum requirements for criminal liability as a performance of conduct, which includes a voluntary act.

Voluntary is defined over in 13—

MS. JORGENSON: 105.

MR. HIRSH: 105. Thank you, very much.

In 13–105, and as a body movement performed consciously and as performed effort of determination and this was an act that was an unvolitional act.

I have not been able to get him, make him available this afternoon not knowing the time on this and I called over there during the lunch hour and wasn't able to get a hold of him but he would be willing to testify to the things that I'm not advising the Court of and I'd ask the Court to recess this to a time that he can be heard on it as a defense to the testimony that you've heard thus far.

. It might be rejected, my offer, and we put an end to it.

If you feel that's not germane to the case, I'm not going to proceed with it but—

THE COURT: I don't know what his testimony is going to be.

MR. HIRSH: He would render an opinion based with reasonable medical probability that that was Nelson's mental state at the time that this act occurred.

THE COURT: Who's this doctor?

MR. HIRSH: Dr. Larry Morris, who is his treating psychologist."

The deputy county attorney who presented the instant case to the grand jury, Ms. Cindy Jorgenson, was also the deputy county attorney representing the state at the probation revocation proceedings. Officer Hermann was present during the above discussion but was not present subsequently when the stipulation was made concerning what Dr. Morris' testimony would be. Neither was she present when Dr. Morris testified at the dispositional hearing after petitioner's probation was revoked. At the revocation proceedings, counsel finally entered into a stipulation as to Dr. Morris' testimony as follows:

"MR. HIRSH: Yes, my understanding is that counsel would stipulate that Dr. Morris, if he were called will testify that he is a certified psychologist, been practicing in Arizona for some period of years

and that he has been treating Dale Nelson for approximately 15 months on a regular basis; that he is thoroughly familiar with Dale Nelson's case. He is thoroughly familiar with the facts in this case and that he would, based on reasonable medical probability, that Dale Nelson's conduct on November 30, 1982, at the University that is relating to the testimony that has been given in this case was not voluntary; that the actions of Dale Nelson putting his arms around the victim in this case was not a voluntary act in the meaning of A.R.S. § 13–201.

It is my understanding that I could present Dr. Morris' testimony in this fashion and to obviate the appearance, to hasten determination of this proceeding and it was for that reason that I am allowed to give his testimony orally stated for the record rather than calling on the witness, I believe, counsel.

MS. JORGENSON: Yes, Your Honor.

THE COURT: The court will accept the avowal and stipulation and assume that Dr. Morris will testify as you have indicated."

Later at the dispositional hearing, held prior to the grand jury proceedings and at which Ms. Jorgenson was also present, Dr. Morris testified that petitioner had little or no control over his actions when he attacked and kidnapped the woman in this case and that when he did forcibly restrain her, he probably did not have a conscious intent to do anything beyond that.

Petitioner argues that since he was charged with kidnapping under A.R.S. § 13–1304 which requires that the restraining of another person be done "knowingly" with the intent to do one of the various enumerated acts, it was relevant that his acts were not voluntary and that he probably had no conscious intent to do anything beyond restraining the victim. The psychologist's opinion as to petitioner's mental state is obviously relevant. The grand jury could have refused to return an indictment against petitioner. *See* A.R.S. § 13–201.

Additionally, the grand jury could have found that a requisite element of kidnapping was not present. *See* A.R.S. § 13–1304(A)(1–6). The questioning by the two grand jurors indicated that they may have believed petitioner's mental condition was relevant and material to the jury's determination of probable cause. It was at this point that the prosecutor interfered with the inquiry, informing the jury that their questions were not relevant. When the questioning was redefined so as to illuminate petitioner's mental state, the responses forthcoming from the witness were, in their best light, misleading. The most obvious point at which the prosecutor should have set the record straight was when the grand juror asked whether the witness had any information whether any medical treatment the accused was receiving would shed any light on his state of mind.

In *State v. Baumann,* 125 Ariz. 404, 610 P.2d 38 (1980), our supreme court stated:

> "The duty of a grand jury is to decide whether probable cause exists and that probable cause determination may only be challenged by a motion alleging that the defendant was denied a substantial procedural right or that an insufficient number of grand jurors concurred in the indictment, 17 A.R.S. Rules of Criminal Procedure, Rule 12.9.... Absent a showing of prejudice in these grand jury proceedings, there can be no reversal of error. [citations omitted]. 125 Ariz. at 409 [610 P.2d 38]."

The state argues the petitioner was not denied a substantial procedural right since the prosecutor was merely performing her role in advising the grand jury on legal matters. The state argues that the prosecutor was merely expressing her opinion on the legal significance of the evidence. We disagree. What the grand jurors sought was to determine the petitioner's state of mind, his culpable mental state at the time of the incident, a factor to be weighed in its determination of probable cause. To bar

such inquiry denied petitioner a substantial procedural right. Additionally, the state argues that under *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), indictments are not to be held open to challenge on the ground of inadequate or incompetent evidence. However, this is not a case where petitioner is challenging the sufficiency of the evidence but rather this is a challenge to a limitation of the evidence of the mental state required for a crime to have been committed.

Petitioner's second argument is that since it was shown that the witness perjured herself before the grand jury, *United States v. Basurto,* 497 F.2d 781 (9th Cir. 1974), requires setting the indictment aside. The state responds by citing *State v. Jacobson,* 22 Ariz.App. 128, 524 P.2d 962 (1974), where we found that the fact situation was distinguishable from that in *Basurto.* In *Basurto* it was shown that the testimony before the grand jury was perjured, that the prosecuting attorney knew of such perjury and that the perjured testimony was material to the indictment. In *Jacobson,* the alleged fabrication was not material to the indictment. The instant case, however, is analogous to *Basurto.* Here, while we cannot say that the testimony presented was perjured, we can say that the testimony before the grand jury was misleading and that the prosecutor knew of its misleading character. There is a duty of good faith on the part of the prosecutor with respect to the court, the grand jury, and the defendant. *United States v. Basurto, supra.* In *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), the supreme court stated:

> "... a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment, [citations omitted]. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. [citations omitted]. 360 U.S. at 269 [79 S.Ct. at 1177]."

Although the long line of cases quoted in *Basurto* have as their foundation the use of perjured testimony, we note that it is not the fact that the testimony is perjurious but rather that evidence, whether intentionally or unintentionally false, has been presented to the trier of fact and is used as a basis for finding probable cause. The defendant has no effective means of cross examining or rebutting the testimony given before a grand jury. Therefore, it is particularly incumbent upon the prosecutor, upon witnessing the use of misleading testimony, to correct the record before that body.

Since we find that petitioner was denied substantial due process in having an indictment returned against him with the use of misleading testimony, we find that the trial court abused its discretion in denying the motion for remand and a new determination of probable cause. The order denying the motion is vacated and the lower court is ordered to dismiss the indictment and to remand the case to the grand jury for a redetermination of probable cause.

Relief granted.

KLEINSCHMIDT and MEYERSON, JJ., concur.