751 P.2d 566

STATE of Arizona, ex rel. Charles R. HASTINGS, Yavapai County Attorney; Robert K. Corbin, Attorney General, Petitioner,

v.

SUPERIOR COURT OF the STATE OF ARIZONA, In and For the COUNTY OF YAVAPAI, Honorable James Sult, a Judge thereof, Respondent Judge,

Duncan W. EDWARDS, Real Party in Interest.

No. 1 CA–SA 076.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 19, 1987.

Review Granted April 5, 1988.

Charles R. Hastings, Yavapai Co. Atty. by Steven B. Jaynes, Deputy Co. Atty., Prescott, and Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for petitioner.

Lawrence William Katz, Prescott, for respondent Duncan W. Edwards, Real Party in Interest.

Arizona Attorneys for Criminal Justice by Stephen M. Dichter, Phoenix, amicus curiae.

## OPINION

GRANT, Presiding Judge.

This court accepted jurisdiction of this petition for special action in order to answer the question of whether a defendant in a criminal case has the right to post-indictment questioning of the grand jury.

Duncan W. Edwards (Edwards), real party in interest, was indicted by the 36th Yavapai County Grand Jury in Prescott, Arizona, for Counts I and III, fraudulent schemes and artifices; Count II, theft; and Counts IV through X, forgery. Following the indictment, Edwards's attorney requested permission to question the grand jurors who indicted Edwards regarding their qualifications. The state opposed the request and filed a motion for protective order to preclude Edwards from conducting an independent inquiry and individual questioning of the grand jurors who indicted him. The judge denied the state's motion for protective order and granted defendant leave to conduct grand juror interviews. The trial court also approved a list of questions propounded by defense counsel for these purposes and proposed to hold the grand jury over after the conclusion of its normal duties for the purpose of arranging the interviews with defense counsel. The trial court granted the state a stay of proceedings in order to file this special action. The attorney general filed a motion to join in the special action as a petitioner. This court granted the attorney general's motion and permitted him to file legal memoranda.

## PROCEDURAL HISTORY

On August 25, 1986, The Honorable James Hancock, Presiding Judge of the Yavapai County Superior Court, impaneled the 36th Yavapai County Grand Jury in Prescott, Arizona. During the course of the impanelment the prospective grand jurors were questioned to determine their qualifications to serve. They were questioned as required by A.R.S. § 21–201 to determine whether they were at least 18 years of age and whether they met the qualifications for voter registration set forth in A.R.S. § 16–101. They were also questioned regarding personal information such as occupation, marital status, etc. Finally, the prospective grand jurors were questioned regarding conflicts of interest and impartiality. Once they were impaneled, the court advised the grand jury of its duties as set forth in rule 12.1(d), Arizona Rules of Criminal Procedure, and in particular the requirement of self-disqualification in a particular case for any reasons enumerated in rule 12.2, Arizona Rules of Criminal Procedure.

One of the matters considered by the 36th Grand Jury was 36–GJ–3290. In that matter the grand jury was assisted by Steven B. Jaynes, Chief Deputy County Attorney of Yavapai County. To assist the grand jurors with their duty of disqualification as set forth in rules 12.1(d) and 12.2, Mr. Jaynes provided an outline of the facts and allegations of the matter. Thereafter, the foreman twice reminded the grand jurors of their duties of disqualification under rule 12.2. There were no disqualifications. The grand jury returned a true bill against respondent Duncan W. Edwards. Since the grand jury was impaneled August 25, 1986 and its term is not to exceed 120 days pursuant to A.R.S. § 21–403, at the time the stay of this court was granted on December 15, 1986, the grand jury still had thirteen days remaining in its term.

## DID THE TRIAL COURT PROPERLY GRANT THE DEFENSE MOTION FOR POST–INDICTMENT QUESTIONING OF MEMBERS OF THE GRAND JURY?

### A. *Standing/ripeness.*

█ Respondents' amicus, Arizona Attorneys for Criminal Justice, argues that because the Yavapai County Grand Jury is an independent investigatory body, the Yavapai County Attorney did not have stand-

ing to bring the instant petition for special action relief. In a similar vein, respondents' amicus argues that until someone with standing, *e.g.*, one of the grand jurors, personally objects to the proposed interviews, this matter is not ripe for special action review. We reject both of these arguments.

Pursuant to A.R.S. § 12–2021, special action relief is available to a party "beneficially interested" who does not have a plain, adequate and speedy remedy at law. In determining whether a party has standing to file a petition for special action, courts must apply the phrase "party beneficially interested" liberally to promote the ends of justice. *Armer v. Superior Court*, 112 Ariz. 478, 480, 543 P.2d 1107, 1109 (1975), (quoting *Barry v. Phoenix Union High School*, 67 Ariz. 384, 387, 197 P.2d 533, 534 (1948)).

This is not a case in which Edwards's counsel was content to make the investigative contact with grand jurors individually after the expiration of their term and to abide by their individual decisions whether to grant or withhold consent to be interviewed. Rather, he sought to conduct interviews under the auspices of the court and to have the court hold the grand jury over for that purpose. In such a proceeding the state is beneficially interested. First of all, the county attorney would necessarily be present to object to improper questions and to prevent unlawful disclosures, a subject we discuss *infra*. Second, this issue arises as a matter of first impression. No rule provides whether, how, or under what circumstances the court should authorize such interviews. Our disposition affects not just this case, but many in the criminal justice system, and the state is a necessary party.

The matter presently before us is ripe for special action review. Because the county attorney does have standing to bring this special action, it was not necessary for the county attorney to wait for another party, *e.g.*, one of the grand jurors, to object to the proposed interviews. The county attorney had standing to object to

the proposed interviews, and he made a timely objection.

### B. *Propriety of Post–Indictment Questioning.*

■ We begin our analysis with the basic proposition that an accused is entitled to the right of due process during grand jury proceedings. *Crimmins v. Superior Court*, 137 Ariz. 39, 41, 668 P.2d 882, 884 (1983). A component of that due process right is the use of an unbiased grand jury. *Id.* According to rule 12.9(a), grand jury proceedings may be challenged by filing a motion for a new finding of probable cause on either of two grounds: (1) the defendant was denied a substantial procedural right, or (2) an insufficient number of *qualified* grand jurors concurred in the finding of the indictment.

Edwards contends that without post-indictment questioning, the remedy of a rule 12.9 motion for a new finding of probable cause is illusory. Edwards argues that a criminal defendant should be allowed to interview the individual grand jurors regarding their qualifications after the indictment has been returned if the defendant is to be able to make a good faith motion for a new finding of probable cause. Edwards correctly points out that, absent facts to the contrary, the actions of the grand jury are presumed lawful. *Franzi v. Superior Court*, 139 Ariz. 556, 564–65, 679 P.2d 1043, 1051–52 (1984); *State v. Bojorquez*, 111 Ariz. 549, 553, 535 P.2d 6, 10 (1975).

At the present time, the constitutional and statutory rights to an unbiased grand jury by one who is under investigation are secured largely without that person's involvement. A.R.S. § 21–409(A) provides that when a grand jury is summoned, the court and the prosecutor examine the jurors regarding their qualifications. In addition, rule 12.1(d)(3) requires the court to inform each grand juror of a duty to disqualify him or herself in a particular matter for any of the reasons enumerated in rule 12.2 (grounds for disqualification). However, the court is not required to repeat its examination of the individual grand jurors prior to the presentation of each

case. *State v. Urrutia,* 24 Ariz.App. 439, 539 P.2d 913 (1975).

Even without undertaking post-indictment questioning of the grand jurors, a criminal defendant is not entirely unable to check on the grand jurors' qualifications. In accordance with rule 12.8, a transcript of the grand jury proceedings is filed with the clerk of the superior court within twenty days following return of the indictment. A close examination of the transcript itself may reveal that an insufficient number of qualified grand jurors concurred in the indictment.

In addition to the grand jury transcript, the defendant receives a list of the names of the individual grand jurors. The defendant is free to check on certain matters relating to the grand juror qualifications, *e.g.,* age, length of residence, relationship to defendant, etc., without ever interviewing individual grand jurors. However, it can be reasonably argued that a grand juror's bias or prejudice in favor of the state or against the defendant can only be revealed through personal questioning of each individual grand juror.

### C. *Subject Matter of Examination and Unlawful Disclosure Concerns.*

In evaluating whether the court should compel grand jurors to submit to interviews regarding their qualifications, it will be helpful to separate the matters about which a grand juror could be examined into two categories: (A) the individual grand juror's qualifications along with the testimony and proceedings which took place before the grand jury, and (B) the grand jurors' deliberations. The Arizona Rules of Criminal Procedure and the statutes governing grand juries provide guidance regarding which matters may be discussed by a grand juror along with those matters which may not be discussed.

Rule 12.8 and A.R.S. § 21–411 require the presiding or impaneling judge to appoint a court reporter to record all of the proceedings before the grand jury, with the exception of the grand jurors' deliberations. According to rule 12.8(c), the reporter's notes of the proceedings must be transcribed and filed with the clerk of the superior court within twenty days of the return of the indictment. The transcript of the proceedings is then made available to the prosecution and the defendant.

The approach of rule 12.8 and A.R.S. § 21–411 is to treat grand jury proceedings (including questioning regarding grand juror qualifications) and grand juror deliberations differently. Grand jury proceedings are not kept secret from the defendant, at least not after the transcript of proceedings is filed with the clerk of the superior court. Grand juror deliberations, on the other hand, remain secret and are never recorded or transcribed. Moreover, any juror who discloses confidential grand jury matters may be guilty of a class 2 misdemeanor. A.R.S. § 13–2812(B).

Grand juror qualifications are set forth in rule 12.2 and A.R.S. §§ 21–201 and 21–211. According to A.R.S. § 21–201, every grand juror shall be at least 18 years of age and shall meet the requirements for voter registration prescribed by A.R.S. § 16–101. Rule 12.2 provides as follows:

The following persons shall be disqualified from serving as grand jurors in any particular action:

a. Witnesses in the action;

b. Persons interested directly or indirectly in the matter under investigation;

c. Persons related by consanguinity or affinity within the fourth degree to either of the parties to the action or proceedings;

d. Persons biased or prejudiced in favor of either the state or the defendant.

A.R.S. § 21–211 is virtually identical to rule 12.2.

Rule 12.2(b) disqualifies persons from serving as grand jurors who are interested directly or indirectly in the matter under investigation. Rule 12.2(d) further disqualifies persons who are biased or prejudiced in favor of either the state or the defendant. It is not difficult to see how questions that are designed to determine if a grand juror is interested in the subject matter of the investigation or if the grand juror is biased or prejudiced in favor of one of the

parties may elicit information that touches on the grand jury's deliberations.

Rule 12.1(d)(6) requires the court to inform the grand jurors of those matters which are confidential and of the penalties for the wrongful disclosure of confidential matters. The criminal statutes presently establishing penalties for unlawful grand juror disclosure are A.R.S. §§ 13–2812 and 13–2813. Section 13–2812 provides in relevant part as follows:

A. A person commits unlawful grand jury disclosure if such person knowingly discloses to another the nature or substance of any grand jury testimony or any decision, result or other matter attending the grand jury proceeding which is required by law to be kept secret, except in the proper discharge of his official duties or when permitted by the court in furtherance of justice.

A.R.S. § 13–2813 prohibits unlawful disclosure of an indictment, information or complaint.

A.R.S. § 13–2812 does not precisely define exactly which matters attending a grand jury proceeding are required by law to be kept secret or for what period of time those matters are to be kept secret. If under rule 12.8 and A.R.S. § 21–411 grand juror deliberations must be kept secret, even after a transcript of the proceedings has been filed,[1] grand jurors questioned by defense counsel regarding their qualifications are put in jeopardy of violating a criminal statute, in the event that information regarding their deliberations is inadvertently released.

Section 13–2812 provides a safety valve that allows a grand juror to avoid any confusion regarding the confidentiality of any matters attending a grand jury proceeding. Section 13–2812 allows a grand juror to disclose a matter which is required by law to be kept secret, if "permitted by the court in the furtherance of justice." Clearly, one method for a grand juror to remove all danger of a violation of A.R.S. § 13–2812 when defense counsel seeks a post-indictment interview, is to decline to submit unless directed to do so by a judge.

### D. *When May the Examination Take Place?*

In order to further illustrate the problems created when defense counsel seeks to interview grand jurors regarding their qualifications, it will be helpful to isolate and consider each of the time periods during which a grand juror could be interviewed. Grand juror interviews could conceivably be sought during any one of three time periods: (A) prior to returning an indictment against the defendant; (B) after an indictment has been returned against the defendant but before the transcript of the proceedings has been filed pursuant to rule 12.8; or (C) after an indictment has been returned against the defendant and after the transcript of the proceedings has been filed pursuant to rule 12.8. An examination of the applicable rules and statutes demonstrates differing concerns arising from contact with grand jurors during each of these three periods. We consider each of these periods in turn.

### 1. Pre-indictment questioning

Rule 12.6 and A.R.S. § 21–412 *prohibit* defense counsel from communicating with any grand juror in those cases in which the accused, accompanied by defense counsel, appears before the grand jury. Rule 12.6 provides in relevant part as follows:

A person under investigation by the grand jury may be compelled to appear or may be permitted to appear before the grand jury upon his written request.... If he is accompanied by counsel before the grand jury, counsel shall not attempt to communicate with anyone other than his client. Any communication or attempted communication shall result in counsel's summary expulsion by the foreman from the grand jury session.

Section 21–412 is virtually identical in its terms to rule 12.6. Although neither rule 12.6 nor A.R.S. § 21–412 prohibits contact between defense counsel and grand jurors in those cases where the accused is not called as a witness before the grand jury, it

---

**1.** This is not a question we are presently called upon to decide.

is implicit in these sections that such contact is improper.

According to A.R.S. § 21–403, grand juries serve for a maximum term of 120 days. In certain circumstances, the grand jury's term may be extended beyond 120 days. The present case does not, at first glance, involve pre-indictment questioning of grand jurors. However, where multiple indictments are pending against the same defendant, as in the case at bar, the same grand jury may be asked to consider whether more than one indictment should be returned against a single individual. If the indictments are returned at different times, post-indictment questioning may at the same time be pre-indictment questioning, which is implicitly prohibited by rule 12.6 and A.R.S. § 21–412 and therefore should not be permitted by the trial judge.

### 2. Post-indictment/pre-filing questioning

As noted above, rule 12.8 requires that a transcript of the grand jury proceedings (with the exception of the grand jury's deliberations) be filed with the clerk of the superior court within twenty days after the indictment is returned. Section 13–2812 prohibits the disclosure of any matter attending a grand jury proceeding which is required by law to be kept secret. The rules and statutes do not state explicitly whether, during the period between the returning of the indictment and the filing of the reporter's transcript, matters relating to grand juror deliberations must be kept secret.

We believe that permitting defense counsel to question individual grand jurors during this period would place those grand jurors in danger of violating A.R.S. § 13–2812. As indicated above, a grand juror can avoid this risk by insisting on judicial approval of the interview. However, in our view such approval should be withheld before the reporter's transcript is released. It is always possible that a defect in the grand jury proceedings will appear in the transcript, *see, e.g., State v. Superior Court*, 102 Ariz. 388, 430 P.2d 408 (1967), rendering questioning of individual grand jury members unnecessary. In order to minimize the burden on the grand jurors and the court, defense counsel must be required to first examine the transcript before any court-approved questioning of grand jurors is sought.

### 3. Post-indictment/post-filing questioning

Once the transcript has been filed with the clerk of the superior court in accordance with rule 12.8, and the grand jury has been discharged, logic dictates that the grand jurors should be free to discuss their qualifications.[2] In this regard, defense counsel correctly states that there is no case law, statute or rule that would forbid such an inquiry. An ex-grand juror approached individually, outside the auspices of the court, should be free to grant or withhold consent to be interviewed. However, as indicated earlier, the scope and duration of A.R.S. § 13–2812's prohibition on disclosure is inexplicit. A grand juror may well prefer to withhold consent for these or other reasons. We thus reach the issue before us. When, as here, the defense attorney seeks to invoke the court's assistance in conducting such interviews, should the court grant or withhold permission? If the former, upon what showing, and with what restrictions?

### E. *Disposition.*

■ Rule 12.2(d) specifically prohibits a grand juror who, in a particular action, is biased or prejudiced in favor of either the state or the defendant from sitting as a grand juror. In addition, *Crimmins* states categorically that due process requires the use of an "unbiased grand jury." 137 Ariz. at 41, 688 P.2d at 884. In our opinion a defendant would be unduly restricted in assuring his right to a qualified grand jury by an absolute prohibition on post-indictment interviews with the individual grand

---

**2.** Where the grand jury is not yet discharged, questioning should be deferred for reasons stated in Section (D)(1), *supra.*

jurors. Therefore, we reject such a prohibition. We next face the question whether: 1) either to permit interviews after a prima facie showing of bias or prejudice; or 2) to permit interviews with no prima facie showing of bias or prejudice. The first option would (1) allow interviews of individual grand jurors in those cases where there is a strong indication (*e.g.*, pretrial publicity, large economic impact to or from the defendant's activities, etc.) that some of the grand jurors were prejudiced against the defendant, and (2) would avoid a burden to grand jurors in those cases where there is no indication whatsoever that any of the grand jurors were unqualified. However, if we were to adopt this approach, the trial court would be required to conduct some type of evidentiary hearing in those cases where defense counsel seeks to interview the grand jurors, to determine if a prima facie case exists. In this regard defense counsel asserted at oral argument that, were this court to adopt this approach, he is prepared to make a prima facie showing that some of the grand jurors in this case may have been unqualified. The second option would be to permit interviews without any prima facie showing of bias or prejudice.

In order to insure a defendant's right to be indicted by a qualified grand jury without unduly burdening the judicial system or the individual grand jurors, the court should take the approach which the trial judge here ably devised. We hold that if there is to be questioning of grand jurors under the auspices of the court, it shall take place before the judge. However, before any questioning, defense counsel shall first be required to give notice to the prosecutor and to the court of his intention to interview the grand jurors. Thereupon, the court shall conduct a hearing to determine whether the defendant can establish a prima facie showing that some grand jurors may have been unqualified. If the court so determines, then questioning may proceed in the presence of the judge. If other indictments are pending against the same defendant, the prosecutor can oppose the proposed interviews on that basis. If the prosecutor has no such objection, the judge shall allow defense counsel to proceed in open court to interview the individual grand jurors concerning their qualifications provided a finding of a prima facie showing has been made.

Although we cannot predict the number of occasions when the procedure we have outlined herein will be utilized, we believe that there will be very few instances when the prima facie showing can actually be made regarding bias and prejudice of grand jurors. Therefore, judicial resources will not be wasted because the questioning of grand jurors cannot proceed under the auspices of the court without a prior judicial determination that a prima facie showing of bias and prejudice has been made. On the other hand, because the judge sanctions the questioning, and because it occurs on the record in open court before the judge, no grand juror will be in danger of violating the grand jury unlawful disclosure statute, nor will any grand juror be subject to harrassment by defense counsel.

In the matter before us defense counsel requested judicial approval to question grand jurors. We have pointed out in this opinion the protection that judicial approval provides grand jurors against potential problems under A.R.S. § 13–2812 as well as the protection of the integrity of the grand jury system. We note, however, that no rule or statute dictated this result. Therefore, the Arizona Supreme Court may desire to promulgate a rule of procedure to cover this situation. We remand this case for further proceedings consistent with this opinion. The stay previously granted is vacated at the time the mandate issues in this case.

CONTRERAS and FIDEL, JJ., concur.