Robert K. Corbin, Atty. Gen. by Michael A. Edwards and Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for petitioners.

Lawrence W. Katz, Prescott, for real party in interest.

David W. Adams, II, Phoenix, for amicus curiae Arizona Pros. Attys.

Stephen M. Dichter, Chair, amicus curiae Committee, Arizona Attys., Phoenix, for Criminal Justice.

781 P.2d 590

**STATE of Arizona, ex rel. Charles R. HASTINGS, Yavapai County Attorney; Robert K. Corbin, Attorney General, Petitioners,**

v.

**The Honorable James SULT, Judge of the Yavapai County Superior Court, Respondent,**

**Duncan W. EDWARDS, Real Party in Interest.**

**No. CV–88–0024–PR.**

Supreme Court of Arizona.

Sept. 26, 1989.

### OPINION

MOELLER, Justice.

### ISSUE AND JURISDICTION

We granted the state's petition for review to determine under what circumstances, if any, an attorney may question members of a sitting grand jury. We have jurisdiction pursuant to article 6, § 5(3) of the Arizona Constitution and Rule 8(b) of the Arizona Rules of Procedure for Special Actions.

### FACTS

On August 25, 1986, the presiding judge of the Yavapai County Superior Court empaneled a county grand jury. Pursuant to rule and statute, he questioned the prospective grand jurors regarding their qualifica-

tions to serve. In addition, the judge questioned the panel on a myriad of topics, including occupation, marital status, and children. Finally, he instructed the panel on conflicts of interest, which, he explained, would disqualify individuals from service.

The grand jury heard several matters on a number of occasions. On October 9, 1986, the grand jury convened to investigate Duncan Edwards, the real party in interest in this case. The matter was continued until the next weekly session of October 17th. Before the grand jury deliberated on Edwards's matter, the foreman of the grand jury reminded the panel that any member with an interest in the outcome must disqualify himself. At the October 17th session, the grand jury returned an indictment against Edwards, charging him with two counts of fraudulent scheme or artifice, one count of theft, and seven counts of forgery.

Following Edwards's arraignment, his attorney requested permission to question the grand jurors regarding their qualifications. The state opposed the request and moved for a protective order prohibiting questioning. The trial court denied the motion for protective order and granted the request to question the grand jurors. The trial court extended the term of the grand jurors so they would be subject to the court's jurisdiction, presumably for the purpose of being able to compel the jurors to submit to defense counsel's interrogation.

The state petitioned the court of appeals for special action relief. The court of appeals accepted jurisdiction and, in a published opinion, denied the state relief. *State ex rel. Hastings v. Superior Court,* 156 Ariz. 250, 751 P.2d 566 (App.1987). The state petitioned this court for review. We granted review and ordered oral argument. We have also had the benefit of briefs from *amici.* We now vacate the court of appeals' opinion and reverse the trial court's ruling.

## COURT OF APPEALS' OPINION

The court of appeals stated the issue as "whether a defendant in a criminal case has the right to post-indictment questioning of the grand jury." 156 Ariz. at 251, 751 P.2d at 567. The court, citing *Crimmins v. Superior Court,* 137 Ariz. 39, 668 P.2d 882 (1983), concluded that an absolute prohibition on post-indictment interviews would unduly restrict a defendant's due process right to an unbiased grand jury. *Hastings,* 156 Ariz. at 255–56, 751 P.2d at 571–72.

The court held that any court-sanctioned questioning must occur in the court's presence. *Id.* at 256, 751 P.2d at 572. The court determined that the proper procedure for an attorney desirous of questioning the grand jury members would be to first notify the prosecutor and the court of his intention. Then the court would hold "a hearing to determine whether the defendant can establish a prima facie showing that some grand jurors may have been unqualified." *Id.* The only elaboration the court provided on what might constitute a prima facie case was: *"e.g.,* pretrial publicity [and] large economic impact to or from the defendant's activities, etc." *Id.* If such a prima facie case is established, the interviews go forward in the court's presence. *Id.*

## LEGAL BACKGROUND

In *Crimmins* we held that an accused has a due process right to an unbiased grand jury. 137 Ariz. at 41, 668 P.2d at 884. An accused effectuates this right primarily through Rules 12.3 and 12.9 of the Arizona Rules of Criminal Procedure. Rule 12.3 permits a challenge to the grand jury "only on the ground that the grand jurors were not drawn or selected according to law." Ariz.R.Crim.P. 12.3(a), 17 A.R.S. The rule also provides that "an individual grand juror may be challenged on the ground that he is not qualified to sit on the grand jury or on the particular matter at hand." *Id.* Rule 12.9 provides that grand jury proceedings may only be challenged by a motion for a new finding of probable cause. Ariz.R.Crim.P. 12.9(a), 17 A.R.S. The basis for a motion may be either: (1) the accused was denied a substantial procedural right; or (2) an insuffi-

cient number of qualified grand jurors concurred in the finding of the indictment. *Id.*

Statutes and rules secure an unbiased grand jury largely without defendant's or his attorney's participation. The court examines, or voir dires, the grand jurors to determine that each juror is a qualified elector of the county and can sit impartially. *See* Ariz.R.Crim.P. 12.1(b), 17 A.R.S. In addition, the jurors are informed of their duty to disqualify themselves from sitting on a particular matter in which they have a conflict of interest. *See* Ariz.R.Crim.P. 12.-1(d)(3), 17 A.R.S. Generally, and as occurred in this matter, the jurors are reminded of this duty after identification of the parties in the matter under consideration.

In addition to the examination conducted by the court, the defendant, after indictment, receives a transcript of the proceedings (although not the deliberations) and a list of the names of the grand jurors. *See* Ariz.R.Crim.P. 12.8(c), 17 A.R.S. Thus, a defendant can determine from this material whether the grand jurors were properly voir dired and whether the requisite number of grand jurors voted to indict. However, limitations do exist on the amount and type of information available to the defendant about the grand jury proceedings that resulted in his indictment. Particularly, a shroud of secrecy isolates grand jury deliberations from all but the members of the grand jury. In fact, A.R.S. § 13–2812 makes it unlawful for a grand juror to reveal the substance of the grand jury's deliberations, except for those matters "permitted by the court in furtherance of justice."

## DISCUSSION

Defendant's attorney made a request to the court to interview the grand jurors concerning their qualifications and their knowledge of Duncan Edwards. The request was unaccompanied by any showing or hint of bias or prejudice on the part of the grand jurors. We regard defense counsel's attempt to question all of the members of the grand jury as no less than a "fishing expedition" designed to establish the basis for a motion to challenge the indictment. Defendant's request in this case clearly fails; however, the issue remains: whether a defendant that in fact makes a prima facie showing of bias or prejudice can interview various or all members of a sitting grand jury.

Both the trial court and the court of appeals determined that a defendant could, at times, question sitting members of a grand jury; however, we have a number of problems with the procedure established by the trial court and the court of appeals. First, the trial court agreed to let defense counsel interview all members of the grand jury. We regard this approach as too broad and obviously revealing that this attorney did not have any articulable concerns about a given grand jury member; instead, he was simply searching for something he could call bias or prejudice. Next, many of the questions defense counsel submitted to the judge were general in nature and duplicated matters covered by the judge's voir dire, of which a transcript was available to the defendant. A few questions indicated a concern about pretrial publicity, but were not at all tailored to a particular theory or juror.

The court of appeals stated that before any questioning, the trial "court shall conduct a hearing to determine whether the defendant can establish a prima facie showing that some grand jurors may have been unqualified." *Hastings*, 156 Ariz. at 256, 751 P.2d at 572. The court cited only pretrial publicity and large economic impact to or from defendant's activities as indications of a prima facie case. Even if we were to consider permitting such an inquiry, the court would waste vast amounts of time hearing motions and sitting through questioning on this vague and easily met standard. Moreover, under this procedure, the grand jurors themselves would be needlessly harassed by a defendant's attempt to find enough information to file a Rule 12.3 or 12.9 motion.

A prima facie case is one in which evidence is presented which, if not rebutted, would be sufficient to establish a given claim. Certainly, a prima facie case of bias

or prejudice cannot be established simply with a few newspaper articles on a matter.

In addition, any questioning that we might consider permitting would be unnecessary. If defense counsel were able to piece together from the transcript and any other extrinsic evidence a true prima facie case of bias or prejudice on the part of a grand juror or grand jurors, he has a motion pursuant to Rule 12.3 or 12.9 available as a remedy.

A number of courts have considered the very question this case presents. They have uniformly rejected any attempt by defense counsel to question grand jury members about a specific case or to have the court do so.[1] The closest any court has come to permitting such an inquiry is the Supreme Judicial Court of Maine in the case of *State v. Warren,* 312 A.2d 535 (Me.1973). In *Warren,* the court recognized that in some extreme circumstances (which the court held did not exist in *Warren* ), the court could grant defense counsel's motion to have the supervising judge voir dire the grand jury on specific circumstances. The *Warren* court explained that defense counsel would have to demonstrate actual prejudice before the court would grant the motion. In Arizona, if such a showing were made, the remedy would clearly be to grant a Rule 12.9 motion for remand for a new probable cause finding, a remedy not available to the *Warren* court.

Division Two of the court of appeals considered a somewhat similar issue and rejected an attempt at questioning grand jurors. In *State v. Superior Court (Soto),* 26 Ariz.App. 482, 549 P.2d 577 (1976), the court declined to permit the state to fill voids in the transcript by post-indictment questioning of grand jury members. The basis for the court's position was the waste of judicial time and unreliability of the memories of grand jurors. Division Two

reaffirmed that position in *Wilkey v. Superior Court,* 115 Ariz. 526, 528, 566 P.2d 327, 329 (1977).

Like every other court that has considered the issue, save our court of appeals in this case, we decline to subject the members of the grand jury to post-indictment interrogation. Rules 12.3 and 12.9 provide the accused with opportunities to challenge a grand jury, a grand juror, or the grand jury proceedings. These rules, together with the judge's voir dire prior to empanelment, the reminder of the duty of self-disqualification where appropriate, and the requirement that the defendant receive a copy of the transcript of the proceedings, adequately protect an accused from bias or prejudice. In addition, "any grand jury taint ... is purged by the burden of proof imposed upon the state at trial and by the unbiased deliberations of the petit jury." *State v. Simms,* 201 Conn. 395, 518 A.2d 35, 40 (1986).

## DISPOSITION

We reverse the trial court's ruling and vacate the opinion of the court of appeals.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concur.

HOLOHAN, J., participated in this matter but retired prior to the filing of this opinion. CORCORAN, J., did not participate in the determination of this matter.

1. *See, e.g., U.S. v. Ballard,* 663 F.2d 534, 544 n. 25, *modified on other grounds,* 680 F.2d 352 (5th Cir.1982); *In re Balistrieri,* 503 F.Supp. 1112, 1114 (E.D.Wis.1980); *Schwartz v. U.S. Dept. of Justice,* 494 F.Supp. 1268, 1275 (E.D.Pa.1980); *U.S. v. Knowles,* 147 F.Supp. 19, 20 (D.C.1957); *Khaalis v. U.S.,* 408 A.2d 313, 333 (D.C.App. 1980), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980); *Reed v. U.S.,* 383 A.2d 316, 321 (D.C.App.1978), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978); *Seay v. State,* 286 So.2d 532, 585 (Fla.1973), *cert. denied,* 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974); *State v. Warren,* 312 A.2d 535, 540 (Me. 1973); *People v. Edmond,* 86 Mich.App. 374, 391, 273 N.W.2d 85, 92 (1978); *Commonwealth v. Millhouse,* 255 Pa.Super. 206, 386 A.2d 581, 583 (1978).