IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Petitioner*,

*v.*

HON. JEFFREY T. BERGIN AND HON. DANELLE B. LIWSKI,
JUDGES OF THE SUPERIOR COURT OF THE STATE OF ARIZONA,
IN AND FOR THE COUNTY OF PIMA,
*Respondents*,

*and*

RYAN TAYLOR REMINGTON,
*Real Party in Interest*.

No. 2 CA-SA 2023-0078
Filed December 19, 2023

---

Special Action Proceeding
Pima County Cause No. CR20223150001

**JURISDICTION ACCEPTED; RELIEF GRANTED**

---

COUNSEL

Laura Conover, Pima County Attorney
By Chris Ward, Deputy County Attorney, Tucson
*Counsel for Petitioner*

Natasha Wrae PC, Tucson
By Natasha Wrae

and

Law Office of Michael W. Storie, Tucson
By Michael Storie
*Counsel for Real Party in Interest*

---

**OPINION**

---

Judge Gard authored the opinion of the Court, in which Presiding Judge Eppich and Chief Judge Vásquez concurred.

---

G A R D, Judge:

¶1        In this special-action proceeding, the state seeks review of the respondent presiding judge's order granting real-party-in-interest Ryan Remington's request for a transcript of a grand jury proceeding that resulted in the grand jurors declining to return an indictment against him.[1] Because the respondent erred by entering that order, we accept jurisdiction and grant relief.

**Factual and Procedural Background**

¶2        In August 2022, a grand jury indicted Remington for one count of manslaughter.  The superior court remanded the matter to the grand jury on Remington's motion to redetermine probable cause.  Before the second grand jury presentation, Remington submitted a *Trebus* letter, asking the prosecutor to present certain evidence to the grand jury.[2]  The second grand jury returned a "no bill," meaning that it had not found

---

[1]The state seeks special-action relief as to both Presiding Judge Jeffrey Bergin and Judge Danelle Liwski, who initially ordered the grand jury transcript's release.  But we reversed Judge Liwski's order in a previous special action in this matter.  *State v. Liwski*, No. 2 CA-SA 2023-0032, ¶ 16 (Ariz. App. May 16, 2023) (mem. decision).  We therefore do not address the state's arguments as to that ruling.

[2]*Trebus v. Davis*, 189 Ariz. 621, 625-26 (1997) (requiring prosecutor to advise grand jury of defendant's request to appear or to present clearly exculpatory evidence).

probable cause and therefore had not returned an indictment. On the state's request, the court dismissed the matter without prejudice.

¶3         Days later, Remington filed a request for a transcript of the second grand jury proceeding. Based on the state's "indecision as to how it plan[ned] to proceed with the alleged homicide charges," Remington argued he needed the transcript "to effectively prepare a follow-up *Trebus* letter." The state opposed the request, asserting that Remington had "not made a particularized showing of why disclosure [was] needed to further the interests of justice such that grand jury secrecy should be set aside." In reply, Remington explained that he needed the transcript to examine the grand jurors' questions in the event they had focused on "areas not previously contemplated by the parties."

¶4         Respondent Judge Liwski granted Remington's request, and the state moved to reconsider, arguing, in part, that Judge Liwski lacked jurisdiction to enter the order because "there [were] no active criminal felony charges pending." Judge Liwski denied the state's motion, relying on Ariz. Const. article VI, § 14(1), (4), and (11) as the basis for the court's jurisdiction.

¶5         The state sought special-action review, and this court ordered supplemental briefing on the applicability of A.R.S. § 21-411(A), which governs the preparation of grand jury transcripts. In its supplemental brief, the state conceded that "§ 21-411(A) appears to confer the trial court with authority and jurisdiction to order that a grand jury transcript be prepared in a case that did not end in an indictment."

¶6         This court accepted special-action jurisdiction and granted relief, reversing Respondent Judge Liwski's order disclosing the transcript to Remington. *State v. Liwski*, No. 2 CA-SA 2023-0032 (Ariz. App. May 16, 2023) (mem. decision). We explained, "The last sentence of § 21-411(A) plainly provides the presiding judge with the jurisdiction and authority to order the release of a grand jury transcript in situations not otherwise covered by the statute, such as when a 'no bill' is returned." *Id.* ¶ 12. Because Judge Liwski was not the presiding judge, we concluded she had "lacked the authority to order the release of the second grand jury transcript to Remington." *Id.* ¶ 15. Neither party filed a petition for review of this court's decision.

¶7         Remington then filed another request for the transcript of the second grand jury proceeding, this time directed to Presiding Judge Bergin. Remington argued "there ha[d] been no indication from the [s]tate that it

no longer intends to submit the matter to a third grand jury" and, as a result, his "request remain[ed] the same." In response, the state again maintained that Remington had failed to make "a particularized showing of why disclosure is needed." Relying on A.R.S. § 13-2812(A), which criminalizes disclosure of grand jury proceedings, the state asserted that a court may release a grand jury transcript of a no-bill proceeding only when in furtherance of justice and that Remington's request fell short of this standard. The state further reasoned that Remington was on a "fishing expedition" and that releasing the transcript would "erod[e] the public's confidence that grand jury proceedings are truly secret proceedings."

¶8        Judge Bergin granted Remington's request for the second grand jury transcript. He explained that this was "a very unique case":

> As I described it before when we were looking at a third grand jury, one having been true billed, one no billed, and recognizing that the secrecy policy or the confidentiality policy is not well served in this case and recognizing that defense has put forward an argument showing a need and value for the representation of their client, and the Court does interpret that as in furtherance of justice.

¶9        He further ordered all juror identification redacted and limited the use of the transcript to "the defense of the criminal matter arising out of this incident." This petition for special action followed.

**Jurisdiction**

¶10        "Our decision to accept jurisdiction of a special action is highly discretionary." *League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, ¶ 4 (2009); *see also* Ariz. R. P. Spec. Act. 3 bar committee note. Here, special action is the only means by which the state may obtain review of the presiding judge's order to release the transcript to Remington. *See* A.R.S. § 13-4032 (providing orders from which state may appeal). This matter also raises a purely legal issue, making it particularly appropriate for special-action review. *See ChartOne, Inc. v. Bernini*, 207 Ariz. 162, ¶ 8 (App. 2004).

¶11        Further, a presiding judge's authority to release a grand jury transcript of a proceeding that did not result in an indictment is a potentially recurring issue of statewide importance. *See Devlin v. Browning*,

249 Ariz. 143, ¶¶ 6-7 (App. 2020) (special-action review appropriate when case presents issue of statewide importance or issue likely to recur). Finally, as discussed below, the presiding judge erred by ordering the transcript's release. *See* Ariz. R. P. Spec. Act. 3(c) (special action appropriate to address whether determination was abuse of discretion); *State v. Campoy*, 220 Ariz. 539, ¶ 37 (App. 2009) (when trial judge commits error of law, judge abuses discretion). For these reasons, we exercise our discretion and accept special-action jurisdiction.

## Discussion

**¶12** The state's argument has two parts. First, the state contends the presiding judge "lacked authority to order the preparation and disclosure of the transcript in this circumstance." Second, assuming the presiding judge had such authority, the state asserts "Remington did not make the required showing to justify the order." We address each argument in turn.

## I. Authority

**¶13** Section 21-411(A) requires the trial court to appoint a court reporter for grand jury proceedings and, when the grand jury returns an indictment, requires the reporter to transcribe and file a transcript of the proceeding. That transcript must then be made available to the defendant and the prosecutor. *Id.* The statute's final two sentences are at issue here:

> The transcript or a portion of the transcript may be denied to a defendant by the court upon a showing of extraordinary circumstances by a prosecuting officer. The reporter's notes which are not transcribed as provided in this section shall be filed with the clerk of the superior court and impounded and shall be transcribed only when ordered by the presiding judge of the superior court.

*See also* Ariz. R. Crim. P. 12.7(c) (corresponding procedural rule requiring court reporter to transcribe and file grand jury transcript within twenty days of indictment, to be "made available only to the court, the [s]tate, and the defendant").

**¶14** The state contends that § 21-411(A) does not apply to "grand jury proceedings that end with no indictment." It reasons that § 21-411(A)'s

final sentence, in which we located the presiding judge's authority to order the transcript in the previous special action, does not apply to no-bill proceedings. Rather, the state contends that the sentence refers to transcripts withheld from the defendant based on a showing of extraordinary circumstances, as discussed in the statute's penultimate sentence. The state also renews all of its previous arguments from the first special-action proceeding, including its assertion that the respondent judges lacked authority to order the transcript's preparation because the criminal case had been dismissed, depriving the superior court of jurisdiction over the matter.

**¶15** As discussed above, we determined in the first special-action proceeding that § 21-411(A) gives the presiding judge jurisdiction and authority to release a grand jury transcript of a no-bill proceeding. *Liwski*, No. 2 CA-SA 2023-0032, ¶ 12. The state did not request reconsideration of that ruling or ask the Arizona Supreme Court to review it. Our decision has therefore become law of the case. *See Stauffer v. Premier Serv. Mortg., LLC*, 240 Ariz. 575, ¶ 15 (App. 2016) (law of the case provides that court decision in case is "the law of that case on the issues decided throughout all subsequent proceedings in both the trial and appellate courts, provided the facts, issues and evidence are substantially the same as those upon which the first decision rested"); *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278 (App. 1993) ("The doctrine referred to as 'law of the case' describes the judicial policy of refusing to reopen questions previously decided in the same case by the same court or a higher appellate court.").

**¶16** At oral argument, the state urged this court to exercise its discretion and not apply the law-of-the-case doctrine. *See Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, ¶ 40 (App. 2004) (describing law of the case as discretionary, procedural doctrine, rather than substantive limitation). But the state identifies no change in the facts, issues, or law that would warrant disregarding law of the case here. *See Stauffer*, 240 Ariz. 575, ¶ 15.

**¶17** Instead, as the state acknowledged at oral argument, it posited in the previous special action what it now contends was a "mistaken reading" of § 21-411(A). In that proceeding, the state conceded that § 21-411(A) "confer[s] the trial court with authority and jurisdiction to order that a grand jury transcript be prepared in a case that did not end in an indictment," although the statute was "silent as to the proper reasons for such preparation . . . or disclosure to any party." We interpreted the statute

consistent with the state's concession, but the state now contends that its analysis, as well as ours, was erroneous.

**¶18**        As a general rule, "'a party who has assumed a particular position in a judicial proceeding is estopped to assume an inconsistent position in a subsequent proceeding involving the same parties and questions'" when that party "gained judicial relief" in the previous proceeding. *State v. Towery*, 186 Ariz. 168, 182, 183 (1996) (quoting *Martin v. Wood*, 71 Ariz. 457, 459 (1951)). This court proceeded in view of the state's argument in the previous special action and we granted the state relief; therefore, in the interest of protecting "the integrity of the judicial process," the state is judicially estopped from advancing a different interpretation now. *Id.* at 182; *see also Powell-Cerkoney*, 176 Ariz. at 278.

**¶19**        But even were we to reconsider § 21-411's meaning in light of the state's changed position, we would reach the same conclusion. When interpreting statutes, we "effectuate the text if it is clear and unambiguous." *Windhurst v. Ariz. Dep't of Corr.*, __ Ariz. __, ¶ 13, 536 P.3d 764, 769 (2023) (quoting *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, ¶ 9 (2018)). We "interpret statutory language in view of the entire text, considering the context and related statutes on the same subject." *Id.* (quoting *Molera v. Hobbs*, 250 Ariz. 13, ¶ 34 (2020)); *see also Shifflette v. Marner*, 255 Ariz. 538, ¶ 7 (App. 2023) ("As this case involves the intersection of multiple statutes, we construe them together, seeking to give meaning to all provisions." (quoting *State v. Francis*, 243 Ariz. 434, ¶ 6 (2018))). And "[w]e seek 'to harmonize statutory provisions and avoid interpretations that result in contradictory provisions.'" *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, ¶ 11 (2023) (quoting *Lagerman v. Ariz. State Ret. Sys.*, 248 Ariz. 504, ¶ 35 (2020)).

**¶20**        The state's argument that we must read the final sentence of § 21-411(A) to modify the preceding sentence is inconsistent with the statute's clear and unambiguous text. *See Windhurst*, __ Ariz. __, ¶ 13, 536 P.3d at 769. The provision's final sentence directs that "reporter's *notes* which are *not transcribed*" are to be impounded and "*transcribed*" only on order from the presiding judge. § 21-411(A) (emphasis added). The previous sentence, however, describes circumstances in which a "*transcript* or a portion of the *transcript*" may be denied to the defendant. *Id.* (emphasis added). The statute's penultimate sentence thus applies to reporter's notes that have already been transcribed, while its final sentence—by its plain terms—applies only to reporter's notes that have not yet been transcribed. Because § 21-411(A) requires reporter's notes to be transcribed as a matter

of course upon an indictment's return, the circumstance addressed in the statute's final sentence arises when an indictment has not been returned, not when a defendant has been denied an already existing transcript.

¶21 Further, although § 21-411(A) does not expressly address disclosure of a grand jury transcript, we must read it in view of the broader statutory framework protecting grand jury secrecy. *See Windhurst*, __ Ariz. __, ¶ 13, 536 P.3d at 769; *Shifflette*, 255 Ariz. 538, ¶ 7. That framework includes § 13-2812(A), which criminalizes disclosure of any grand jury testimony, subject to three exceptions, and is not limited to proceedings that result in indictments:

> A person commits unlawful grand jury disclosure if the person knowingly discloses to another the nature or substance of any grand jury testimony or any decision, result or other matter attending a grand jury proceeding, except in the proper discharge of official duties, at the discretion of the prosecutor to inform a victim of the status of the case or when permitted by the court in furtherance of justice.

¶22 Assuming the automatic preparation and disclosure of a grand jury transcript following an indictment in accordance with § 21-411(A)'s requirements constitutes disclosure "in the proper discharge of official duties," § 13-2812(A)'s separate exception for court-authorized disclosure "in furtherance of justice" broadly contemplates additional circumstances in which a transcript may be released with court approval. In fact, that provision would be unnecessary if a grand jury transcript could only be released to the state and defendant under § 21-411(A)'s automatic procedures. *See Nicaise v. Sundaram*, 245 Ariz. 566, ¶ 11 (2019) ("A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous.").

¶23 As our discussion above shows, although the legislature has enacted a statutory scheme preserving grand jury secrecy, it has not enacted substantive laws that prohibit the superior court from ordering a no-bill transcript disclosed. To the contrary, the statutory scheme contemplates some disclosure when necessary to further justice. We thus decline to revisit our previous conclusion that the presiding judge has authority—on an appropriate showing—to order disclosure of a grand jury transcript even when an indictment has not been returned. *See* §§ 21-411, 13-2812(A).

## II.  Required Showing

**¶24**        We now turn to the state's argument that Remington failed to make the "required showing" to receive the grand jury transcript.  Because this issue involves a question of law, we review it de novo.  *See State v. Burgess*, 245 Ariz. 275, ¶ 19 (App. 2018).

**¶25**        Quoting *State ex rel. Ronan v. Superior Court*, 95 Ariz. 319, 332 (1964), the state maintains that Remington was required to "show a 'particularized need' that the transcript must be disclosed 'in the furtherance of justice.'"  For his part, Remington did not challenge this standard in his response to the petition for special action.  But at oral argument, he suggested he need only show that the transcript's release would be "in the furtherance of justice," without also showing a particularized need.

**¶26**        Thus, the parties seemingly agree that, at a minimum, an unindicted individual seeking his grand jury transcript must make a threshold showing that the requested disclosure would further justice.  This standard is consistent with § 13-2812(A), which, as previously discussed, exempts from criminal liability disclosure of protected grand jury information when a court determines that disclosure would further justice and anticipates that grand jury disclosure may be necessary outside the scope of § 21-411's automatic provisions.

**¶27**        The "in furtherance of justice" language has long appeared in our statutes and procedural rules, and our supreme court interpreted its meaning in *Ronan*.  The court specifically addressed former Rule of Criminal Procedure 107, which was part of a larger scheme controlling grand jury secrecy and, as relevant here, grand jury transcripts.  *Ronan*, 95 Ariz. at 323-24, 330-32.  In contrast to the modern § 21-411, the rules and statutes in place when our supreme court decided *Ronan* did not provide for grand jury transcripts to be disclosed—even to indicted defendants—as a matter of course.  *See id.* at 325 ("It is clear that the defense, at least in advance of trial, is not entitled to a complete transcript of the grand jury testimony . . . .").  But Rule 107 allowed a court to authorize disclosure "in the furtherance of justice."  *Id.* at 323.  Further, § 21-234, Ariz. Code Ann. (1956), provided a criminal penalty for violating Rule 107's restriction.  These provisions largely mirrored § 13-2812's prohibition on disclosing

witness testimony, including its exception for disclosure upon court permission "in the furtherance of justice."[3]

¶28        Interpreting Rule 107, our supreme court first noted that "[t]he reference to the 'furtherance of justice' . . . must . . . be read in the light of the general public interest in preserving grand jury secrecy." *Ronan*, 95 Ariz. at 324-30. Relying in part on *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395 (1959), which set forth a "particularized need" test, the *Ronan* court directed that a defendant's professed need for a transcript be balanced against societal interests in interpreting the "good cause" standard for disclosure. *Id.* at 326, 332. It emphasized that a defendant was "not entitled to a transcript of testimony of any witness solely because he wants to find out what the witness said." *Id.* at 332. And it continued: "To grant him such privilege is not in the 'furtherance of justice' because the public interest in preservation of secrecy out weig[hs] the defendant's interest in discovery." *Id.*; *cf. State v. Huffman*, 222 Ariz. 416, ¶ 13 (App. 2009) (discussing meaning of "interests or furtherance of justice" and explaining it requires consideration of defendant's constitutional rights against societal interests).

¶29        *Ronan* thus dictates that the in-furtherance-of-justice assessment requires a person who is not entitled to a transcript as a matter of course—such as any defendant under the former rules, or, under the current rules, an individual the grand jury declined to indict—to show "facts and circumstances" demonstrating a "particularized need" that would authorize the court to make a transcript available in the furtherance of justice.[4] 95 Ariz. at 332. And the court should order the transcript only

---

[3]When the modern rules of criminal procedure and revised statutes were adopted in the late 1970s, the legislature repealed §§ 21-234 and 13-544 and replaced them with §§ 13-2812 and 13-2813. *See* 1978 Ariz. Sess. Laws, ch. 201, § 326; 1977 Ariz. Sess. Laws, ch. 142, § 90 (adding § 13-2812); 1977 Ariz. Sess. Laws, ch. 142, § 19 (moving § 13-544 to § 13-2813). Our supreme court ultimately moved Rules 95, 106, and 107 of the Rules of Criminal Procedure, which regulated grand jury proceedings, to Rule 12.1 and 12.7, Ariz. R. Crim. P. Ariz. Sup. Ct. Order R-17-0002 (Aug. 31, 2017).

[4]Although the parties appear to view "particularized need" and "in furtherance of justice" as two separate inquiries, *Ronan* establishes that a defendant's showing of a particularized need for a transcript is part of the inquiry whether the transcript's disclosure would be in furtherance of justice.

after balancing the defendant's need against the societal interests in grand jury secrecy. *Id.* at 326, 332.

¶30 Remington has not shown a particularized need here. By his own admission, Remington seeks the transcript "to effectively prepare a follow-up *Trebus* letter" based on what was said before the second grand jury. This is a facially invalid reason for disclosure. *See Ronan*, 95 Ariz. at 332 (when a defendant seeks a grand jury transcript for "discovery purposes *only*, the reason or motive for requesting it becomes immaterial" because he is not entitled to a transcript merely to determine what was said).

¶31 Moreover, the purpose of a *Trebus* letter is to allow the target of a grand jury investigation to put the state on notice of clearly exculpatory evidence that the state must present to the grand jury.[5] *Willis v. Bernini*, 253 Ariz. 453, ¶¶ 26-27 (2022); *see also Bashir v. Pineda*, 226 Ariz. 351, ¶ 22 (App. 2011). *Trebus* does not give such targets a preliminary right to discover what the state's evidence is, nor does it create a right for them to engage in what the state here appropriately terms a "fishing expedition" by scouring the state's evidence in search of something helpful. *Cf. State ex rel. Adel v. Adleman*, 252 Ariz. 356, ¶ 21 (2022) (party may not override privilege to engage in fishing expedition). We have recognized that "the grand jury proceeding is not a 'mini trial,'" and expanding the discovery rules in the manner Remington suggests would make it so. *Hansen v. Chon-Lopez*, 252 Ariz. 250, ¶ 43 (App. 2021).

¶32 Nor are we persuaded by Remington's argument that he will suffer prejudice absent the transcript's disclosure. *See Ronan*, 95 Ariz. at 332. Remington seeks production of the second grand jury transcript solely to determine what was said there. Even if the lack of all desired information could be prejudicial, he already has the transcript of the first grand jury proceeding, as well as the state's disclosure released thereafter, including police reports, expert witness reports, and video of the incident. Thus, unlike other individuals for whom a grand jury has returned no indictment, Remington has the benefit of much, if not all, of the state's evidence. *Cf. Ronan*, 95 Ariz. at 330 ("There is no more unfairness, if it is an unfairness,

---

[5]The claimed need here—essentially to explore the grand jurors' mental processes—not only has little, if anything, to do with the purpose stated above, but it also presumes that a third grand jury would have the same concerns as the second.

to the defendants here than is the common lot of all defendants indicted by a grand jury.").

¶33        Moreover, any discrepancy between the testimony at the second grand jury proceeding and the testimony at the first, or between the testimony at the second grand jury and other parts of the state's disclosure, would not be proper content for a *Trebus* letter.  *See Willis*, 253 Ariz. 453, ¶ 45 (observing that "a request to present evidence that only impeaches the veracity and credibility of a witness is insufficient to invoke a prosecutor's obligation" to present clearly exculpatory evidence to the grand jury); *Trebus*, 189 Ariz. at 625 (noting that "issues such as witness credibility and factual inconsistencies are ordinarily for trial" and that "the grand jury is not the place to try a case").  And even if, as Remington fears, the state's witness at the second grand jury proceeding divulged new facts not contained in his prior testimony or the state's disclosure, and those facts are clearly exculpatory to Remington, the state would be required to present them at a third grand jury proceeding, regardless whether Remington submitted an updated *Trebus* letter.  *See Willis*, 253 Ariz. 453, ¶¶ 25-26.  The state further agreed at oral argument that, if Remington were ever reindicted, he could receive the second grand jury transcript for impeachment purposes at trial.

¶34        On the other hand, as the state notes, there are significant privacy concerns in the grand jury context.  *See, e.g.*, *Samaritan Health Sys. v. Superior Court*, 182 Ariz. 219, 221 (App. 1994) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979))); *State ex rel. Hastings v. Sult*, 162 Ariz. 112, 114 (1989) (discussing limitations on disclosure of information from grand jury proceedings).  Secrecy insulates the grand jury from public pressure, protects witnesses and targets of grand jury investigations, and encourages witness cooperation.  *Samaritan Health Sys.*, 182 Ariz. at 221.  Contrary to Remington's position, these concerns persist even when the grand jury has not returned an indictment.  *See id.* ("The public policy reasons for grand jury confidentiality apply . . . to those cases in which the grand jury reviews it and returns a 'no bill,' i.e. no indictment, or a 'true bill,' i.e. an indictment.").  In fact, such interests are often most pronounced in such a circumstance.

¶35        Simply put, Remington has not established that providing him with the transcript of the second grand jury proceeding is "in the 'furtherance of justice.'"  *Ronan*, 95 Ariz. at 332.  To the contrary, "the public

interest in preservation of secrecy out weig[hs] [Remington's] interest in discovery." *Id.* We "must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *Douglas Oil Co.*, 441 U.S. at 222. Remington's request was insufficient as a matter of law, and the presiding judge erred by concluding otherwise. *See Burgess*, 245 Ariz. 275, ¶ 19.

## Disposition

**¶36** We accept special-action jurisdiction and grant relief. We reverse the presiding judge's order granting Remington's request for release of the transcript of the second grand jury proceeding. We also deny Remington's request for attorney fees because he has not cited authority supporting his request and he is not the prevailing party. *See* Ariz. R. P. Spec. Act. 4(g) ("In any special action, a party may claim costs and attorneys' fees as in other civil actions."); Ariz. R. Civ. App. P. 21(a)(2) (claim for fees "must specifically state the statute, rule, decisional law, contract, or other authority for an award of attorneys' fees").