668 P.2d 882

**Thomas D. CRIMMINS, Petitioner,**

v.

**The SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, and the Honorable Philip W. Marquardt, judge of division No. 12–E thereof, and Thomas E. Collins, Maricopa County Attorney, real party in interest, Respondents.**

No. 16505–SA.

Supreme Court of Arizona, En Banc.

Aug. 3, 1983.

---

1. For example, where A.R.S. § 13–116 does not prohibit the imposition of consecutive sentences.

Hiner, Crowe & Scott by Michael B. Scott, Phoenix, for petitioner.

Thomas E. Collins, Maricopa County Atty. by John Wilkinson, Deputy County Atty., Phoenix, for respondents.

HAYS, Justice

This special action turns on the question of whether the trial court abused its discretion or acted arbitrarily or capriciously in denying petitioner's motion, challenging his indictment for kidnapping and assault, under rule 12.9, Rules of Criminal Procedure, 17 A.R.S. In that motion Crimmins alleged he was denied substantial procedural rights by virtue of the prosecutor's failure to (1) present the evidence in a fair and impartial manner, and (2) advise the grand jurors of the right of a private individual to make a citizen's arrest. The motion was denied after a hearing on February 15, 1983, and this special action followed. We have jurisdiction under the Arizona Constitution, art. 6, § 5(1), and Rule 8, Rules of Procedure for Special Actions, 17A A.R.S. We find that the denial of that motion was an abuse of discretion, and we remand for a redetermination of probable cause.

Five days after Crimmins' arrest on charges of kidnapping and assault, his defense counsel wrote to the office of the Maricopa County Attorney to confirm what he understood to be the prosecutor's oral agreement "... to allow us to meet with you regarding this case prior to the initiation of another complaint so we can answer any questions you might have and make our

side of the case known." The county attorney made no response to the letter, which also briefly related circumstances leading to the kidnapping charge. Those circumstances and their presentation as evidence raise the substantive issue in this case so we set them out here in some detail.

On November 17, 1982, Crimmins returned home from work in the late afternoon and discovered that his house had been burglarized. He suspected that a neighbor's teenaged son (Blumer) might have been responsible so he proceeded to the boy's home. Once there, he talked with the boy's mother who told him that her son was at a neighborhood video arcade with some of his friends. Crimmins went there, and as he drove up he saw Blumer and some other juveniles in front of the place of business. Crimmins approached the group, noticing as he walked up to them that one of the boys (Val) was wearing a pair of stereo headphones similar to a pair taken from Crimmins' home that afternoon. When Crimmins attempted to detain Val, the young man broke free and ran but Crimmins managed to retrieve the headset from him.

As Val ran off, Crimmins turned and seized another boy (Federico) who had been standing with the group that included Val. He placed Federico in his jeep and returned to the Crimmins home. Crimmins questioned Federico while both were still in the vehicle, obtaining a list of names (including Paul Val) of persons who, according to Federico, were with Blumer at his apartment on the afternoon of November 17. Crimmins then left the jeep, directing Federico to wait there, and allegedly locked Federico in the vehicle.

Before returning to the jeep Crimmins verified the list of names by consulting with Blumer, who had by then returned home, and called the police to report a burglary with suspect in custody. He then returned to the jeep to question Federico further and made at least one more visit to Blumer's apartment. At some point, upon returning to his jeep, Crimmins discovered that Federico had fled.

Federico made his way to a nearby supermarket where he called his parents and reported that he had been detained and questioned by Crimmins. Federico's parents called the police and reported a kidnapping and assault. Separate police units were dispatched to Crimmins' home for the burglary call and to the supermarket on the kidnapping report. Crimmins was arrested later that evening.

No conference ever occurred between the county attorney and Crimmins. Ultimately, the case was received by the grand jury on December 2, 1982.

■ The Rules of Criminal Procedure permit a challenge to the grand jury proceeding on only two grounds. 17 A.R.S. Rules of Criminal Procedure, rule 12.9. Pursuant to that rule, petitioner has asserted two denials of his substantial procedural rights as noted above. Petitioner correctly points out that an accused is entitled to due process during grand jury proceedings. *State v. Emery,* 131 Ariz. 493, 506, 642 P.2d 838, 851 (1982). In particular, due process here requires the use of an unbiased grand jury and a fair and impartial presentation of the evidence. *Id.*

Our state's courts have recognized the historical independence of the grand jury. *Marston's, Inc. v. Strand,* 114 Ariz. 260, 560 P.2d 778 (1977). The necessity of maintaining that independence arises because of the grand jury's unique role in bringing to trial those who may be guilty and clearing the unjustly accused. The duties of fair play and impartiality imposed on those who attend and serve the grand jury are meant to ensure that the determinations made by that body are informed, objective and just.

Our reading of all the exhibits indicates that the grand jury was not adequately informed of the facts and law. The separate police investigations proceeded independently at first, but it appears from the police reports submitted as exhibits that by the time Crimmins was arrested there was some degree of awareness by all the police that they were dealing with interrelated events. It further appears from the police

report of Blumer's statement that at least some of the juveniles who spent the afternoon and early evening with Federico are the burglars who broke into Crimmins' home.

The state's only witness, Officer Rapp, had participated in the investigation which revealed that Federico had been in the company of the group that included the likely burglars for most of the afternoon and evening of the day when they broke into the Crimmins home. Nevertheless, his testimony before the grand jury inaccurately represented what the police knew about Federico and his possible involvement in the burglary, as this exchange illustrates:

Q. [By Mr. Nelson, Deputy County Attorney] Did your investigation reveal whether or not Arthur Federico was in any way involved in the burglary involving the Thomas Crimmins residence?

A. [By Officer Rapp, Phoenix Police Department] At this time, from interviews with other juveniles, I do not feel and do not believe that Arthur was involved in any way with the burglary.

Q. You have no evidence whatsoever to indicate he was involved?

A. None.

The witness' first statement is not responsive to the prosecutor's question, but is certain to give the impression of a negative answer. The second answer is, in our opinion, inaccurate. While we do not believe the record in this case settles the question of Federico's involvement, the police reports submitted as exhibits lead us to conclude that there was some indication, however uncertain, that Federico might have been involved. Nevertheless, Officer Rapp's testimony alone would not cause us to remand for a redetermination of probable cause.

The effect of his testimony on the minds of the grand jurors can only be fully recognized when it is understood that they considered this inaccurate version of the facts in the context of inadequate instructions on the applicable law. The county attorney did not read the citizen's arrest statutes (A.R.S. §§ 13–3884, 13–3889 and 13–3900) to the grand jury.

■ It was clear, from Crimmins' telephone call to the police, that he believed he had made a citizen's arrest. Even if petitioner had not reported "suspects in custody," it is obvious that Federico was detained because Crimmins suspected him of a crime. The grand jurors perceived this because one of them asked the witness about how long Federico was detained, whether a burglary actually occurred and when it took place. The answers to those questions are all material to the issues raised by a claim of citizen's arrest. We hold that the citizen's arrest statutes were part of the applicable law given the facts of the case, and it was the duty of the prosecutor as legal adviser to the grand jury to instruct on that law. The omission of that legal advice, considered with the inaccurate testimony, rendered the presentation of this case less than fair and impartial as is required by *State v. Emery, supra.*

The state has cited us to *State v. Jessen,* 130 Ariz. 1, 633 P.2d 410 (1981), urging that it is dispositive of Crimmins' claims and requires that he be denied relief. We do not agree.

Jessen, indicted for first degree murder, complained that the grand jury was not instructed as to lesser-included offenses, the elements of those various crimes or potential defenses to prosecution. In addition, Jessen claimed the presentation of evidence to the grand jury was slanted in favor of the state, and that evidence of provocation by the victim and the accused's fear of the victim were withheld from the grand jury. This court found no error in the trial court's denial of Jessen's motion for a new determination of probable cause.

■ First, we note that *Jessen* recognizes the principle that "[c]ourts generally do not concern themselves with the evidence underlying a grand jury indictment." *Id.* at 5, 633 P.2d at 414. This rule has been variously stated in a series of cases reviewing trial courts' determinations of motions for new findings of probable cause. Those cases clearly prohibit a trial court from considering an attack on an indictment based on the

nature, weight or sufficiency of the evidence presented to the grand jury. *See State v. Jacobson,* 22 Ariz. App. 128, 524 P.2d 962 (1974). In this court, and in the trial court, Crimmins has made a different contention. He urges that the proceedings denied him his substantial procedural right to a fair and impartial presentation of evidence. We have reviewed the record and the transcript with that issue as our frame of reference rather than considering sufficiency.

The *Jessen* court found no error based on a failure to give proper instructions because admissions in the record demonstrated that proper instructions were given. Our research has disclosed one case where we examined a claim of denial of due process before the grand jury based on allegedly defective instructions given in response to a grand juror's question. In *State v. Horner,* 112 Ariz. 432, 543 P.2d 118 (1975), we held that the grand jury was properly instructed because the prosecutor's misstatement of the law was part of an unresponsive answer to a juror's question which was itself outside the scope of the jury's proper concern. *Horner* is authority for the proposition that instruction on all the relevant statutes satisfies due process. *Id.* at 433, 543 P.2d at 119. This distinguishes it, and *Jessen,* from the instant case where relevant statutes were not read to the grand jury.

 *Jessen,* which dismissed the defendant's contention that certain factual information was not presented to the grand jurors, does not approve withholding information. Rather, the court found that the allegedly omitted facts were presented to the grand jury. The instant case is distinguishable from *Jessen* because the omission of significant facts, coupled with the omission of instruction on statutes which give the omitted facts their legal significance, rendered the presentation of the case against Crimmins less than fair and impartial. Properly informed as to the facts and instructed as to the citizen's arrest statutes, the grand jury could have decided the propriety and legal effect of Crimmins' reliance on the right of a private individual to arrest a criminal suspect. This is a decision that should have been made by the grand jury in weighing the question of probable cause.

We believe that the grand jury's inability to determine the case based on accurately depicted facts and the applicable law flawed its decision and entitles Crimmins to a new determination of probable cause. Petitioner was denied his right to due process and a fair and impartial presentation of the evidence by the manner in which the proceeding was conducted.

Accordingly, the requested relief is granted. Remanded for a new determination of probable cause.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON, J., concur.

FELDMAN, Justice, specially concurring.

I agree with both the court's analysis and the conclusion which it reaches. I write because I believe we should go further.

As the court indicates, the defendant has a due process right to a fair and impartial presentation of the evidence to the grand jury. Whether included in this or separate from it, in my view he also has a right to an independent grand jury.

> The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge....
>
> ... The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away ....

*Stirone v. United States,* 361 U.S. 212, 218–19, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252 (1960) (footnote omitted).

The grand jury is neither an arm nor a servant of the prosecution. It has an independent responsibility to determine whether there is probable cause to believe a particular crime has been committed. A further function is to protect citizens against unfounded criminal prosecutions. *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). These principles are not confined to the federal system. This court has recently held that

the initiation and control of inquiries into public offenses "rests with the grand jury and not the prosecutor." *Gershon v. Broomfield,* 131 Ariz. 507, 509, 642 P.2d 852, 854 (1982). We stated further that the prosecutor's discretion, is to be used "in assisting the grand jury." *Id.* The prosecutor's powers "are derived from the grand jury; it is the grand jury that possesses the broad investigative powers, and ... that must be the decisionmaker" in exercising those powers. *Id.*

These concepts are embodied in the statute which provides that when the grand jury has "reasonable ground to believe that other evidence, which is available, will explain away the contemplated charge, they may require the evidence to be produced." A.R.S. § 21–412. It is for this reason also that the American Bar Association Standards relating to the prosecution function require the prosecutor to "give due deference to [the grand jury's] status as an independent legal body." 1 *American Bar Association Standards for Criminal Justice,* Ch. 3, Standard 3–3.5(a) (2d ed. 1980).

Thus, the prosecutor is present to assist the grand jury in performing its functions, including that of protecting citizens from overzealous prosecution. In proceedings before the grand jury, "the prosecutor operates without the check of a judge or a trained legal adversary, and virtually immune from public scrutiny." *United States v. Serubo,* 604 F.2d 807, 817 (3d Cir.1979). We must bear in mind the potential for abuse and the "devastating personal and professional impact that a later dismissal or acquittal can never undo," *id.,* when the prosecutor is allowed to exercise control "over a cooperative grand jury." *United States v. Samango,* 607 F.2d 877, 882 (9th Cir.1979).

I would hold, therefore, that there is prosecutorial misconduct in the case at bench. Of course, what is required to make a "fair presentation" to the grand jury, as well as what constitutes manipulation of the grand jury, will vary from case to case. Certainly, however, where the defendant has indicated his willingness to waive his right to remain silent and has volunteered to discuss the case with the prosecutor, one might assume there is a reasonable possibility that he would waive the fifth amendment and testify before the grand jury. The prosecution here failed to notify defense counsel that the case was going to the grand jury and also failed to notify the grand jury that the defendant might be willing to appear and testify. The prosecution thereby deprived the defendant of the right to make a written request of the grand jury to allow him to appear (see Ariz.R.Crim.P. 12.6) and deprived the grand jury of its right to determine whether the defendant's testimony might be "other evidence, which is available, [and] will explain away the contemplated charge ...." The rule, the statute, and the concept of an independent grand jury give the grand jury, not the prosecution, the right to make these determinations.

The prosecutor also usurped the grand jury's role in failing to inform them of relevant facts and law. The circumstances of this case raise obvious and crucial issues of fact and law with respect to whether defendant made a citizen's arrest under A.R.S. §§ 13–3884, 13–3889 and 13–3900, or had illegally restrained the alleged victim with the specific intent necessary to commit kidnapping under A.R.S. § 13–1304. The intent to make a citizen's arrest negates the intent necessary to kidnap. If defendant made a proper citizen's arrest, he committed no wrong. If he made a citizen's arrest without probable cause, he would be liable in tort. If he made a citizen's arrest with unnecessary force, he would be liable in tort and might also be subject to prosecution for assault. However, if all he intended was to make a citizen's arrest, justified or unjustified, he did not have the specific intent[1] required by the kidnapping statute. A first-year law student should see this crucial issue; by failing to so inform the grand jury and by failing to provide it with the facts (which the prosecution had in its own files) and legal advice needed to resolve

---

1. A. A person commits kidnapping by knowingly restraining another person with *intent* to:

that issue, the prosecutor controlled the result and ensured an indictment on an extremely serious charge. No other outcome was possible because the grand jury has no means of obtaining information except through the offices of the prosecutor who is its assistant and advisor.

By withholding important factual information and necessary legal advice in a case which presented obvious issues of fact and law relevant to the determination of probable cause, the prosecution deprived the defendant of his right to an independent grand jury and effectively controlled the result.

I would dismiss the indictment because of prosecutorial misconduct. *See United States v. Samango, supra.*

1. Hold the victim for ransom, as a shield or hostage; or
2. Hold the victim for involuntary servitude; or
3. Inflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony; or
4. Place the victim or a third person in reasonable apprehension of imminent physical injury to the victim or such third person.

5. Interfere with the performance of a governmental or political function.
6. Seize or exercise control over any airplane, train, bus, ship or other vehicle.
A.R.S. § 13–1304(A) (emphasis supplied).