SUPREME COURT OF ARIZONA
En Banc

SCOTT MITCHELL MARETICK,        )   Arizona Supreme Court
                                )   No. CV-02-0253-SA
                  Petitioner,)
                                )
            v.                  )   Court of Appeals
                                )   Division One
HON. BARBARA JARRETT, JUDGE OF  )   No. 1 CA-SA 02-0116
THE SUPERIOR COURT OF THE STATE )
OF ARIZONA, in and for the      )   Maricopa County
County of Maricopa,             )   Superior Court
                                )   No. CR 01-097802
            Respondent Judge,)
                                )
STATE OF ARIZONA,               )
                                )   **O P I N I O N**
      Real Party in Interest.)
                                )

Special Action from the Superior Court of Maricopa County
The Honorable Barbara M. Jarrett, Judge

**REVERSED AND REMANDED**

Court of Appeals, Division One
Decision Order

**VACATED**

QUARLES & BRADY STREICH LANG, L.L.P.                        Phoenix
      by   Darrow K. Soll
Attorneys for Petitioner

RICHARD M. ROMLEY, MARICOPA COUNTY ATTORNEY                 Phoenix
      by   Arthur G. Hazelton, Jr., Deputy County Attorney
      and  Michael G. Denney, Deputy County Attorney
Attorneys for Real Party in Interest

**B E R C H**, Justice

¶1      Petitioner brings this special action to determine

whether the trial court abused its discretion or acted capriciously or arbitrarily in denying his motion for redetermination of the probable cause underlying a manslaughter indictment handed down by a grand jury. A divided panel of the court of appeals affirmed the trial court's decision. We hold that the denial of Petitioner's motion was an abuse of discretion and we remand for a redetermination of probable cause.

## FACTS AND PROCEDURAL HISTORY

¶2 Petitioner Scott Maretick was severely injured and his wife was killed when he lost control of his car and crashed on Frank Lloyd Wright Boulevard in Scottsdale on April 12, 2001. Petitioner's Corvette was allegedly traveling at approximately 100 miles per hour just before the impact.

¶3 Maretick was unconscious at the scene of the accident. His injuries included brain trauma resulting in "permanent cognitive deficit with particular deficit in short-term memory." As a result of his injuries, Maretick was never able to provide investigators with a statement regarding the events leading up to the accident. There are indications that Maretick will never remember the accident or the events immediately following.

¶4 On December 18, 2001, the State convened a grand jury to determine whether probable cause existed to charge Maretick with manslaughter. The State presented only one witness, Scottsdale Police Detective Sean Twitchell. Following the prosecutor's brief

examination of the detective regarding the accident, Twitchell was asked a series of questions by the members of the grand jury. The pertinent portion of the grand jury transcript follows:

> Grand Juror: What is his [Maretick's] health, his status now?
>
> Detective Twitchell: Last time I checked, he made pretty much a full recovery.
>
> Grand Juror: Have you spoken with him and asked him why he was traveling like that?
>
> Prosecutor (to Detective Twitchell): You have received no statements; is that correct?
>
> Detective Twitchell: That's correct.
>
> Grand Juror: Does he have any story to - -
>
> Prosecutor (to juror): He [Detective Twitchell] has received no statements.
>
> Grand Juror: I'm sorry.
>
> Prosecutor: Any other questions?
>
> Prosecutor (to Detective Twitchell): There being no further questions, you may be excused.

Following the proceeding, the grand jury returned an indictment for manslaughter against Maretick.

¶5    Maretick filed a motion in superior court requesting a redetermination of probable cause, arguing that he "was denied his right to have the State present evidence to the grand jury in a fair and impartial manner, and was denied substantial due process in having an indictment returned against him with the use of misleading testimony." His motion contained three arguments:

First, he argued that Detective Twitchell knew that his injuries were severe and ongoing,[1] and therefore the detective was not truthful when he testified that Maretick had fully recovered. Second, he contended that the prosecutor was not fair and impartial when he impeded the grand juror's questions regarding any statements Maretick made to police. Maretick maintains that the manner in which the prosecutor spoke intimidated the grand juror into apologizing for asking the question. Maretick argued that by this conduct, the prosecutor interfered with the grand jury's attempt to investigate his case, which violated his right to have the grand jury operate independently of the prosecutor. Third, Maretick contended that the detective's false representation regarding his health, "coupled with the State's failure to reveal *why* Detective Twitchell 'received no statements' from Mr. Maretick," gave the grand jury the impression that he refused to testify for fear of self-incrimination. He argued that this course of conduct violated his Fifth Amendment right to be free from compelled self-incrimination. As a result, Maretick claimed that the State should have given an instruction advising the jurors of his Fifth Amendment right to remain silent and that any decision to

---

[1]    Maretick bases this contention upon the affidavit of his daughter, Angela Maretick.  In that affidavit, Angela stated that Officer Twitchell contacted her less than a month before the grand jury hearing in an attempt to question Maretick about the accident. Angela avows that she told Detective Twitchell that Maretick's injuries were long term, that he suffered from permanent brain damage, and that he had no memory of the accident.

exercise that right could not be held against him.

**¶6** The trial judge agreed that the detective's testimony was misleading.[2] The court was also troubled by the prosecutor's conduct,[3] but denied the motion, finding that the misleading testimony and questionable prosecutorial conduct were collateral to the issues of probable cause and, therefore, Maretick suffered no prejudice. A divided panel of the court of appeals affirmed the ruling.

**¶7** This court has jurisdiction under Article 6, Section 5(1) of the Arizona Constitution and Arizona Rules of Procedure for Special Actions 8(b). *See Crimmins v. Superior Court*, 137 Ariz. 39, 40, 668 P.2d 882, 883 (1983). Although this court normally reviews decisions in special action cases by petition for review, we will grant review if exceptional circumstances render that process inadequate. Ariz. R.P. Spec. Act. 8(b). We find that to be the situation here and therefore grant review. We do so because an indictment may be challenged only through interlocutory

---

[2] The State has not contended that the detective's testimony was other than misleading.

[3] In her minute entry, the judge explained that "it is unclear to the Court why the prosecutor felt it necessary to interrupt the grand juror repeatedly as she attempted to ask questions of the detective, and to answer the questions for him . . . . It may be that the prosecutor was concerned that an element of sympathy for Defendant might have arisen if the detective was allowed to fully respond to the grand juror's inquiries, as the Grand Jury would have then been made aware of Defendant's current medical condition."

proceedings. Moreover, and more importantly, we do so to stress the unique trust vested in prosecutors in their role as "ministers of justice" when assisting the grand jury in its function. *See* Ariz. R. Sup. Ct. 42, ER 3.8 cmt.

## DISCUSSION

### I. THE GRAND JURY

¶8 The Supreme Court has described the grand jury as "a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused . . . to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice or ill will." *Wood v. Georgia*, 370 U.S. 375, 390 (1962). The grand jury's mission is "to bring to trial those who may be guilty and clear the innocent." *Marston's Inc. v. Strand*, 114 Ariz. 260, 264, 560 P.2d 778, 782 (1977). To do its job effectively, the grand jury must receive a fair and impartial presentation of the evidence. *Crimmins*, 137 Ariz. at 41, 668 P.2d at 884; *State v. Emery*, 131 Ariz. 493, 506, 642 P.2d 838, 851 (1982). Because defendants enjoy few procedural rights before the grand jury, grand juries must be unbiased and independent and must act "independently of either prosecutor or judge." *Marston's*, 114 Ariz. at 264, 560 P.2d at 782.

¶9 Grand jurors have a right to hear all relevant, non-protected evidence that bears on the case. *See id.* Thus, if the

grand jurors have reasonable ground to believe that other available evidence "will explain away the contemplated charge, they may require the evidence to be produced." Ariz. Rev. Stat. § 21-412 (2002); *see also Crimmins*, 137 Ariz. at 44, 668 P.2d at 887 (Feldman, J., specially concurring).

## II. THE PROSECUTOR'S ROLE

¶10 The prosecutor's role before the grand jury is unique in our system. The prosecutor acts not simply as an advocate, but as a "minister of justice," who assists the jurors in their inquiry. *See* Ariz. R. Sup. Ct. 42, ER 3.8 cmt. Prosecutors bear a "particularly weighty duty not to influence the jury because the defendant has no representative to watch out for his interests" before the grand jury. *State v. Hocker*, 113 Ariz. 450, 454, 556 P.2d 784, 788 (1976), *disapproved on other grounds, State v. Jarzab*, 123 Ariz. 308, 311, 599 P.2d 761, 764 (1979). The prosecutor therefore "must not take advantage of his or her role as the ex parte representative of the state before the grand jury to unduly or unfairly influence it." 1 ABA *Standards for Criminal Justice*, Ch. 3, Std. 3-3.5 cmt. (2d ed. 1980). Indeed, the prosecutor must "give due deference to [the grand jury's] status as an independent legal body." *Id.* Significantly, the initiation and control of questioning "rests with the grand jury and not the prosecutor." *Gershon v. Broomfield*, 131 Ariz. 507, 509, 642 P.2d 852, 854 (1982), *quoted in Crimmins*, 137 Ariz. at 44, 668 P.2d at

887 (Feldman, J., specially concurring).  In other words, the prosecutor's powers "are derived from the grand jury; it is the grand jury that possesses the broad investigative powers, and . . . must be the decisionmaker."  *Id.*  It is not the prosecutor's role to deflect the grand jury from its inquiry.

### III. DEFENDANT'S CHALLENGE

¶11    A grand jury's finding of probable cause may be challenged only on two grounds:  "that an insufficient number of grand jurors concurred in the indictment, or that the defendant was denied a substantial procedural right."  *State ex rel. Collins v. Kamin*, 151 Ariz. 70, 72, 725 P.2d 1104, 1106 (1986) (citing Ariz. R. Crim. P. 12.9(a)).  Maretick asserts that Detective Twitchell's misleading testimony, the obstruction of questioning by the prosecutor, and the failure to give appropriate instructions combined to deny his substantial procedural right to a fair and impartial grand jury proceeding.

¶12    In *Crimmins*, we examined a similar claim of a denial of a substantial procedural right.  137 Ariz. at 40, 668 P.2d at 883.  The defendant in *Crimmins* was indicted on a kidnaping charge.  *Id.*  His defense was that he had made a citizen's arrest of a young man whom he thought had burglarized his home.  *Id.*  The State's only witness, the investigating officer, inaccurately testified before the grand jury that he had no evidence that the alleged kidnaping victim was involved with the burglary.  *Id.* at 42, 668 P.2d at 885.

-8-

This court found that the testimony, by itself, was not enough to require redetermination by the grand jury. *Id.* The inaccurate testimony, however, when coupled with the State's failure to give instructions regarding the citizen's arrest statute, "rendered the presentation of this case less than fair and impartial." *Id.* We therefore held that when the State withholds information from the grand jury and couples that conduct with inadequate instructions on the law, the defendant may be entitled to a redetermination of probable cause by an independent grand jury. *Id.* at 43, 668 P.2d at 886.

¶13     The circumstances are similar here. The State presented its case through a single witness, the investigating detective. That witness misled the grand jury by stating that Maretick had enjoyed a full recovery, when he knew that Maretick's brain damage was long term, if not permanent. Indeed, he knew that Maretick was rendered unconscious at the scene and while Maretick was somewhat improved, he had never regained his memory of the events relating to the accident.

¶14     While this misrepresentation alone was not enough to merit a redetermination in this case, the prosecutor assisted in misdirecting the grand jury in two respects. First, he failed to correct the misstatement. Second, he refused to allow the witness to answer the juror's questions, interposing himself between the juror and the witness in such an intimidating manner that the juror

felt compelled to apologize for having asked a question that she had every right to ask – and to have honestly and respectfully answered by the witness. The facts make this case similar to *Crimmins*, in which this court found a denial of due process leading to an order for remand. But to further sully the picture here, the prosecutor failed to instruct the grand jury that it was Maretick's right to be free from self-incrimination, that Maretick had no obligation to present evidence, and that the jurors could draw no negative inference from his failure to do so. *See State v. Corrales*, 138 Ariz. 583, 588 n.3, 676 P.2d 615, 620 n.3 (1983) (reiterating the commonly understood proposition that a jury may not draw negative inferences from a criminal witness's exercise of his Fifth Amendment right); *see also Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 13, 41 P.3d 614, 617 (App. 2001) (stating that an individual's Fifth Amendment privilege "can be claimed in any proceeding," whether civil or criminal). While the prosecutor was not strictly required to give the instruction, there is little doubt that the combination of the witness's misleading testimony, the prosecutor's intervention during grand jury questioning, and the failure to instruct the jurors in the applicable constitutional law raises the concern that the grand jury may have based its indictment upon improper evidence and law.[4]

---

[4] Although instructions to grand juries are usually given before any cases are presented, no rule prohibits giving a later instruction should justice and the needs of the case require that

**¶15** The State counters that, while all of the foregoing is true, the errors did not prejudice Maretick and therefore were harmless. In a criminal proceeding, error "is harmless if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the [outcome]. We must be confident beyond a reasonable doubt that the error had no influence on the jury's judgment." *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993) (internal citations and quotation omitted).

**¶16** In determining whether the error was harmless, we consider each misstep in context. *See Crimmins*, 137 Ariz. at 42, 668 P.2d at 885. The jurors heard the misleading testimony regarding Maretick's health and were led to believe that he was fully recovered and able to make a statement, had he wished to give one. When a juror asked the detective whether Maretick had made any statements, the questions were intercepted and deflected by the prosecutor, who prevented the witness from answering. And finally, the jurors were not instructed as to Maretick's Fifth Amendment rights and how to properly consider his silence. The untrue statements by the detective, the interference by the prosecutor, and "[t]he omission of that legal advice, considered with the inaccurate testimony, rendered the presentation of this case less than fair and impartial." *Id.* We cannot say beyond a reasonable doubt that such error is harmless.

---

it be given.

**¶17** We do not know why the prosecutor cut off the grand jurors' questions. The trial judge posited that he did so fearing that the detective's answer would evoke sympathy from the jurors and prevent an indictment. While sympathy is not a relevant factor in determining probable cause, it is impossible to know where the questioning might have led or how the information might have influenced the jury because of the prosecutor's untimely interruption. Nor is the fact that Maretick made no statement to the police a relevant factor for consideration in determining probable cause. As a minister of justice, the prosecutor must ensure that the jurors understand such fundamental tenets of law.

**¶18** In dissenting from the court of appeals decision, Judge Noyes observed that the detective and prosecutor must have feared that the grand jury might not indict:

> From this scenario emerges a strong appearance that the prosecutor and the police officer knew that the officer had given false testimony, and that they each acted as they did because they were afraid that the grand jury might not indict Appellant if the officer gave truthful answers to the grand jury's questions. The real issue here is whether this was a fundamentally fair grand jury process.

*Maretick v. Jarrett*, 1 CA-SA 02-0116 (Ariz. App. Jul. 22, 2002) (dec. order) (Noyes, J., dissenting). We find that it was not a fundamentally fair process, and we are not convinced, beyond a reasonable doubt, that the errors had "no influence on the jury's judgment." *Bible*, 175 Ariz. at 588, 858 P.2d at 1191.

-12-

¶19    The grand jury, as an independent body, must be allowed to pursue the investigation as it chooses, unless it is pursuing "clearly improper and unfair lines of inquiry." *State v. Superior Court (Smith)*, 186 Ariz. 143, 145, 920 P.2d 23, 25 (App. 1996). Questions regarding statements Maretick may have made to the police cannot be said to be a clearly improper or unfair line of inquiry. A prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *Berger v. United States*, 295 U.S. 78, 88 (1935), *overruled on other grounds, Stirone v. United States*, 361 U.S. 212 (1960). In this unique role, the prosecutor "is in a peculiar and very definite sense the servant of the law." *Id.* The servants of the law whose conduct we examine here interfered with the grand jury's inquiry and in doing so denied Maretick's substantial procedural rights.

**CONCLUSION**

¶20    We find that Maretick's right to due process was violated by the detective's misleading testimony, coupled with the prosecutor's interference with the grand jury's independence and his failure to instruct the jury regarding the pertinent law. We

therefore vacate the opinion of the court of appeals, reverse the decision of the superior court, and remand the case for a redetermination of probable cause.[5]

_____
Rebecca White Berch, Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____
Ruth V. McGregor, Vice Chief Justice

_____
Stanley G. Feldman, Justice (retired)

_____
Michael D. Ryan, Justice

_____

[5] Maretick asks us to dismiss with prejudice, but we do not find here the type of consistent or egregious prosecutorial misconduct necessary for such a determination. *See State v. Minnitt*, ___ Ariz. ___, 55 P.3d 774 (2002); *Pool v. Superior Court (State)*, 139 Ariz. 98, 677 P.2d 261 (1984).

-14-