215 P.3d 397

**Raied FRANCIS, Petitioner,**

**v.**

**The Honorable Teresa SANDERS, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**The Maricopa County Attorney's Office, Real Party in Interest.**

**No. 1 CA–SA 09–0146.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 10, 2009.

Ballacer & Segal By Natalee E. Segal, Phoenix, Co–Counsel for Petitioner.

Law Offices of Neal W. Bassett By Neal W. Bassett, Phoenix, Co–Counsel for Petitioner.

Andrew P. Thomas, Maricopa County Attorney By Diane Meloche, Deputy County Attorney, Phoenix, Attorneys for Real Party in Interest.

## OPINION

SWANN, Judge.

¶ 1 Raied Francis ("Petitioner") brought this special action to challenge the trial court's denial of his motion to remand the indictment for a redetermination of probable cause. We hold that remand was required because the prosecutor interfered with the proper function of the grand jury when he: (1) did not accurately explain the elements of entrapment in response to a question from a grand juror; and (2) incorrectly advised the grand jury that questions pertaining to entrapment were the province of the court or the trial jury, not the grand jury.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On March 31, 2009, a grand jury convened to consider evidence regarding the State's allegation that Petitioner committed seven counts of attempted trafficking in stolen property in the second degree. The State presented testimony that during an undercover investigation, Petitioner, an owner or manager of a cell phone store, was encouraging his employees to burglarize other cell phone stores and steal cell phones.

¶ 3 A detective testified that after he arrested an individual for breaking into a T–Mobile store, that individual admitted committing other burglaries and selling the cell phones to his boss, who knew the cell phones were stolen. According to the detective, Petitioner would buy the cell phones from the individual and "flash"[1] them to avoid detection. This individual agreed to work as an informant for the police.

¶ 4 Based on the information provided by the informant, an undercover operation commenced. On October 8, 2008, an undercover officer was introduced to Petitioner by the informant, and Petitioner agreed to buy phones from the officer after he called an unknown individual to make sure the phones could be flashed. During this initial encounter, the undercover officer told Petitioner the phones were "hot." After this meeting, the undercover officer and Petitioner agreed to work together without the assistance of the informant.

¶ 5 On October 21, 2008, the undercover officer and Petitioner completed a second transaction, whereby Petitioner purchased 20 Samsung Upstage phones from the officer. During this meeting, Petitioner cautioned the undercover officer against getting caught as the informant did; he also requested that the undercover officer bring "higher-end phones."

¶ 6 On November 4, 2008, another detective went undercover to buy back the stolen phones from Petitioner's store. The two phones purchased by this officer were traced back by serial number to two purportedly "stolen" phones sold to Petitioner by the first undercover officer.

¶ 7 After the detective testified, the prosecutor asked the grand jurors if they had any legal questions. The following exchange occurred between the prosecutor and a grand juror:

GRAND JUROR: This reminds me of a movie I saw. Is this entrapment?

---

1. Although not illegal in itself, flashing allows a person to change a phone from one carrier to another.

[PROSECUTOR]: Entrapment is an issue for the court to determine. But entrapment occurs when the police use overbearing force or they, they are the ones that actually not only put the idea in the guy's mind but use some sort of coercion, force or something to get him to do something that he would not normally do.

GRAND JUROR: Okay.

[PROSECUTOR]: Now, the key here is whether or not this person's activity would be done if it weren't the police, for anyone else. Was he likely to commit these kind of offenses. If the police activity is such that you can show coercion, that you can show threats, that you can show that his will was overcome, that's when entrapment comes into play.

So this guy is given the opportunity to commit these crimes. He can accept it or reject it. And that's the test between entrapment and when something is illegal by police activity that's illegal, which entrapment is, and when it's not. Okay. You guys make that decision. At this level a trial jury will make that decision should you find probable cause.

Okay? But that's, that's a good point. And it's overbearing on the person's will to resist that is the key factor here. Okay?

The grand jury returned a true bill charging Petitioner with seven counts of attempted trafficking in stolen property.

¶ 8 On May 14, 2009, Petitioner filed a Motion to Dismiss Indictment and Remand to the Grand Jury. After hearing oral arguments, on June 16, 2009, the trial court denied Petitioner's motion. The court reasoned that the State "has no obligation to instruct the grand jury on an affirmative defense." Thereafter, Petitioner filed this petition for special action relief.

## JURISDICTION AND STANDARD OF REVIEW

¶ 9 A challenge to the denial of a motion for remand generally must be made by special action before trial, and is not

reviewable on direct appeal. *State v. Moody,* 208 Ariz. 424, 439–40, ¶ 31, 94 P.3d 1119, 1134–35 (2004). Further, this petition presents a question of statewide importance that is likely to recur, the answer to which will provide guidance on the extent to which a prosecutor has a duty to provide legal instruction in response to grand jurors' questions concerning affirmative defenses. We therefore accept special action jurisdiction.

¶ 10 We review a trial court's decision to deny a motion to remand an indictment for an abuse of discretion. *See Maretick v. Jarrett,* 204 Ariz. 194, 195, ¶ 1, 62 P.3d 120, 121 (2003). "[I]n reviewing a trial judge's order within the context of a special action, ordinarily we must find the judge abused his discretion or exceeded his jurisdiction or legal authority before we may grant relief." *Twin City Fire Ins. Co. v. Burke,* 204 Ariz. 251, 253–54, ¶ 10, 63 P.3d 282, 284–85 (2003) (citing Ariz. R.P. Spec. Act. 3). We defer to the trial court with regard to any findings of fact, explicitly or implicitly made. *Id.* at 254, ¶ 10, 63 P.3d at 285. "But when a judge commits an 'error of law ... in the process of reaching [a] discretionary conclusion,' he may be regarded as having abused his discretion." *Id.* (quoting *Grant v. Ariz. Pub. Serv. Co.,* 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982); citing *State v. Chapple,* 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983)).

## DISCUSSION

¶ 11 The prosecutor's response to the grand juror's question was flawed in two material respects: (1) it incorrectly suggested that the grand juror's inquiry was inappropriate because "entrapment is an issue for the court to determine"; and (2) it misstated the elements of entrapment.[2]

¶ 12 It is well settled that in a grand jury proceeding, the prosecutor must fairly and impartially present the evidence. *See Maretick,* 204 Ariz. at 197, ¶ 8, 62 P.3d 123. The prosecutor need not provide all exculpatory evidence to the grand jury, but

2. The elements of entrapment are set forth in Arizona Revised Statutes ("A.R.S.") § 13–206(B) (Supp.2008). There is no "coercion" element to the defense. The prosecutor would have satisfied his duty simply by reading or accurately summarizing the statute.

must present "clearly exculpatory" evidence. *Trebus v. Davis,* 189 Ariz. 621, 625, 944 P.2d 1235, 1239 (1997) (quoting *State v. Coconino County Superior Court (Mauro),* 139 Ariz. 422, 425, 678 P.2d 1386, 1389 (1984)). "Clearly exculpatory" evidence includes evidence that supports an affirmative defense. *See Herrell v. Sargeant,* 189 Ariz. 627, 631, 944 P.2d 1241, 1245 (1997) (holding that the prosecutor should have presented evidence that showed the defendant was justified in using force to prevent harm to his daughter). *See also Crimmins v. Superior Court (Collins),* 137 Ariz. 39, 42, 668 P.2d 882, 885 (1983) (holding that it was the duty of the prosecutor as legal advisor to the grand jury to instruct on applicable citizen's arrest statutes when the defendant believed he was engaging in a lawful citizen's arrest).

¶ 13 Though it did not confront the precise question posed by this case, the Arizona Supreme Court noted in *Trebus* that the law "requires the prosecutor to instruct the grand jury on all the law applicable to the facts of the case, even if the grand jury does not make any specific request for additional legal instruction." 189 Ariz. at 623, 944 P.2d at 1237 (citing *Crimmins,* 137 Ariz. at 42, 668 P.2d at 885). While it is clear that a prosecutor must present certain kinds of exculpatory evidence, no Arizona case has yet considered whether a prosecutor must provide *legal* instruction concerning an affirmative defense when asked to do so.

¶ 14 In Arizona, "the initiation and control of questioning 'rests with the grand jury and not the prosecutor.'" *Maretick,* 204 Ariz. at 197, ¶ 10, 62 P.3d at 123 (quoting *Gershon v. Broomfield,* 131 Ariz. 507, 509, 642 P.2d 852, 854 (1982)). The prosecutor must not "deflect the grand jury from its inquiry." *Id.* In *Maretick,* the prosecutor failed to correct a witness's misstatement and refused to allow the witness to answer the juror's questions. *Id.* at 198, ¶ 14, 62 P.3d at 124.

¶ 15 Here, the trial court reasoned "[s]ince the function of the grand jury is accusatory, not adjudicatory, the State is under no obligation to present an anticipated defense." The court cited *Nelson v. Roylston,* 137 Ariz. 272, 669 P.2d 1349 (App.1983), for the proposition that Arizona courts will grant a motion for remand *only* if the prosecutor interferes with the jurors' inquiry into the evidence of the essential elements of the crime. Nelson does not stand for such a broad proposition—it held that a ¦ court should remand to the grand jury when the prosecutor incorrectly tells it that a line of questioning is irrelevant when the question is in fact relevant to essential elements of the case. 137 Ariz. at 276–77, 669 P.2d at 1353–54.

¶ 16 Our supreme court has recognized that "Arizona grand juries, like their federal counterparts, were ... designed to act as a 'vital check against the wrongful exercise of power by the State and its prosecutors.'" *McKaney v. Foreman,* 209 Ariz. 268, 275, ¶ 31, 100 P.3d 18, 25 (2004) (quoting *Campbell v. Louisiana,* 523 U.S. 392, 399, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998)). We conclude that accurate instructions to the grand jury concerning an affirmative defense may be just as essential to avoiding needless prosecution as instruction on one of the elements of the crime. *See, e.g., People v. Lancaster,* 69 N.Y.2d 20, 511 N.Y.S.2d 559, 503 N.E.2d 990, 994 (1987). We therefore hold that while the State has no obligation to anticipate every defense, or to present facts and law pertaining to defenses in every case, it does have an obligation to respond in an accurate fashion to grand jurors' questions concerning defenses. Anything less would prevent the grand jury from performing its essential function of evaluating the merits of the proposed prosecution.

¶ 17 The prosecutor's misstatement in this case of the elements of entrapment, and his suggestion that the juror's question was not within the purview of the grand jury, materially derailed the grand juror's inquiry. This had the effect of interfering with the grand jury's proper function in determining whether prosecution would be a needless exercise.

## CONCLUSION

¶ 18 For the reasons stated above, we do not agree with the legal principle underlying the trial court's broad ruling that the State "has no obligation to instruct the grand jury

on an affirmative defense." We therefore remand for a redetermination of probable cause by the grand jury.

CONCURRING: MARGARET H. DOWNIE, and JOHN C. GEMMILL, JJ.