IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————

**LOUIS E. CESPEDES,**
*Petitioner,*

*v.*

**THE HONORABLE KENNETH LEE, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF PIMA,**
*Respondent Judge,*

**STATE OF ARIZONA,**
*Real Party in Interest.*

———————————

No. CR-16-0384-PR
Filed September 14, 2017

———————————

Special Action from the Superior Court in Pima County
The Honorable Kenneth Lee, Judge
No. CR20154232-001
**AFFIRMED**

Order of the Court of Appeals, Division Two
Filed August 25, 2016

———————————

COUNSEL:

Barbara LaWall, Pima County Attorney, Nicolette Kneup, Deputy County Attorney, Tucson, Attorneys for State of Arizona

Pima County Public Defender's Office, David J. Euchner, Deputy Public Defender, Tucson, Attorneys for Louis E. Cespedes

Louis E. Cespedes, In Propria Persona, Tucson, Petitioner

———————————

JUSTICE GOULD authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICE TIMMER joined. JUSTICE LOPEZ, joined by JUSTICES BRUTINEL and BOLICK dissented.

_____

JUSTICE GOULD, opinion of the Court:

**¶1**        In this case, we hold that the prosecutor's instruction to the grand jury regarding the defense of justification pursuant to A.R.S. § 13-403(1) was correct and did not deprive petitioner Louis E. Cespedes of a substantial procedural right.  Accordingly, the superior court did not err in denying Cespedes' motion to remand the case to the grand jury.

## BACKGROUND

**¶2**        A grand jury indicted Cespedes on two counts of child abuse for physically injuring his son, J.C., by striking him with a belt.  During the presentation to the grand jury, the prosecutor offered Cespedes' statement that he previously had used corporal punishment to discipline J.C.

**¶3**        Cespedes filed a motion to dismiss the indictment and a motion to remand to the grand jury for a new determination of probable cause.  The superior court denied both motions, and the court of appeals declined to accept jurisdiction of Cespedes' special action petition.

**¶4**        We granted review because the proper instruction of grand juries on justification defenses is a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

**¶5**        We review the superior court's rulings for an abuse of discretion.  *See Maretick v. Jarrett*, 204 Ariz. 194, 195 ¶ 1 (2003).

### A.

**¶6**        Cespedes argues he was denied a substantial procedural right because the prosecutor misstated the law regarding justification.  *See* Ariz. R. Crim. P. 12.9(a) (stating that an indictment may be challenged on the grounds a defendant was denied a substantial procedural right during the grand jury proceedings).  Specifically, he claims that the prosecutor incorrectly advised the grand jurors they were not allowed to consider whether his use of physical force was justified under A.R.S. § 13-403(1).

2

This statute provides that a parent's use of "reasonable and appropriate physical force" is justified "to the extent reasonably necessary and appropriate to maintain discipline." *Id.*

¶7          Cespedes bases his argument on the following instructions the prosecutor gave during the grand jury empanelment process:

> [Section 13-] 205 says except as otherwise provided by law, a defendant shall prove any affirmative defense raised by a preponderance of the evidence. . . . Justification defenses that we're going to get into now, the legislature changed this . . . . [J]ustification used to be an affirmative defense up until a few years ago. In other words, if somebody was alleging self-defense, they had to prove by a preponderance of the evidence that it was self-defense. Now, all justification statutes are no longer affirmative defenses. So if somebody alleges that then, as you see, the state must prove beyond a reasonable doubt the defendant did not act with justification. So once that is raised − *and, again, you're not going to be making those decisions − although − well, you're going to be making − you certainly can make a decision as to whether someone was justified in committing the crime*, but in terms of when you go to trial, a person can allege that they were acting in self-defense and then the state has to disprove that beyond a reasonable doubt. That will become clear to you as we go now to Chapter 4, which we're going to spend the rest of the morning on.
>
> .   .   .   .
>
> So when is somebody justified in using physical force under [13-]403? A parent, guardian, teacher or other person entrusted with the care and supervision of minors or incompetent persons can use reasonable and appropriate physical force upon that person when and to the extent reasonably necessary and appropriate to maintain discipline.

(emphasis added).

¶8          Following this instruction, the prosecutor explained that under § 13-401(B) "justification is a defense in any prosecution for an

3

offense pursuant to this title," and that if one's act is justified, a person "may be perfectly protected by the law from [] shooting" another person. The prosecutor then explained:

> There's a lot of reasonablenesses [sic] — reasonabli — reasonable things in there. Again, there's no black or white answer to this. It is what you as the grand jury deem to be reasonable under the circumstances. So the law says that we have this provision that teachers and other folks who are entrusted with the care, they can use reasonable force. *What's reasonable and what's unreasonable is going to be your decision to make.*
>
> All right. And I'm really loathe to give you examples because I don't want to give you an example and you go, oh, that's reasonable or something. You have to decide."

(emphasis added).

### B.

**¶9**         A prosecutor has a duty "to instruct the grand jury on all the law applicable to the facts of the case." *Trebus v. Davis*, 189 Ariz. 621, 623 (1997); *see Crimmins v. Superior Court*, 137 Ariz. 39, 42 (1983). This duty includes providing instructions on justification defenses that, based on the evidence presented to the grand jury, are relevant to the jurors determining whether probable cause exists to indict the defendant. *Korzep v. Superior Court*, 172 Ariz. 534, 540-41 (App. 1991); *see also Francis v. Sanders*, 222 Ariz. 423, 426-27 ¶¶ 12-16 (App. 2009) (discussing prosecutor's duty to instruct grand jury on relevant defense of entrapment).

**¶10**        Here, based on Cespedes' statement that he used physical force to discipline J.C., the prosecutor was required to instruct the grand jury on justification pursuant to § 13-403(1). Reviewing the instructions as a whole, as reflected in the transcripts provided to this Court, we conclude that the prosecutor correctly instructed the grand jury on the defense of justification. *Cf. State ex rel. Thomas v. Granville*, 211 Ariz. 468, 471 ¶ 8 (2005) (stating that instructions to a jury are read as a whole, not in isolated parts, to ensure that a jury is properly instructed on the law).

¶11 The prosecutor first discussed § 13-205(A), which addresses the respective burdens of proof for affirmative defenses and justification defenses. The prosecutor noted that unlike an affirmative defense, once a defendant raises a justification defense, "the state must prove beyond a reasonable doubt the defendant did not act with justification." The prosecutor correctly advised that this standard applies "when you go to trial," and that they would not have to "mak[e] those decisions." *Compare* A.R.S. § 13-205(A) (stating that when a defendant raises a justification defense at trial, the state must prove beyond a reasonable doubt that the defendant did not act with justification), *with* A.R.S. § 21-413 (stating that the grand jury determines whether there is "probable cause to believe the person under investigation" committed a public offense).

¶12 However, the prosecutor correctly advised the jurors that they were "going to be making" decisions about justification and "certainly can" decide whether a defendant's acts were justified. Indeed, he instructed the jurors that they would "have to decide" whether a defendant's use of force was reasonable, emphasizing that "what's reasonable and what's unreasonable is going to be your decision to make." He then provided a correct explanation of the relevant justification defenses to assist them in making this determination. In discussing those defenses, the prosecutor emphasized that justification is a defense to any crime.

¶13 The dissent contends that by advising the grand jurors "you certainly can make a decision as to whether someone was justified in committing" a crime, the prosecutor implied they were permitted, but not required, to consider whether Cespedes' conduct was justified. *See infra* ¶ 26. We disagree. The prosecutor simply advised the jurors that, based on the facts and circumstances of each case, they "can" decide whether a defendant's conduct was justified. The prosecutor emphasized this point when he advised the jurors they would have to decide whether a defendant's use of force was "reasonable under the circumstances," and "[w]hat's reasonable and what's unreasonable is going to be *your* decision to make." (emphasis added). *See infra* ¶ 8. This instruction, in combination with the significant time the prosecutor spent in going through each of the justification defenses, made it clear that the jurors had to consider justification where relevant, but ultimately could decide, based on the facts of the case, whether a defendant's conduct was justified.

**C.**

¶14        Cespedes also argues the prosecutor improperly instructed the grand jurors regarding the standard of reasonableness for using physical force under § 13-403(1).  Cespedes claims the prosecutor failed to advise the jurors that reasonableness under the statute involves (1) a subjective component (whether a defendant believes he is acting reasonably), and (2) an "objective" component (whether the defendant's conduct is reasonable based on the perspective of one who believes in corporal punishment).

¶15        Cespedes' proposed standard of reasonableness is not supported by law.  Generally, an objective standard is used in determining whether a defendant's use of force was reasonable.  Thus, using force in self-defense is based on "a reasonable person's belief, not the unreasonable, even if honest, belief of the accused."  *State v. Tuzon*, 118 Ariz. 205, 209 (1978); *see State v. King*, 225 Ariz. 87, 90 ¶ 11 (2010) (stating that justification under § 13-404 "adopts a purely objective standard, permitting the use of force only if a 'reasonable person would believe that physical force is immediately necessary to protect himself'"); *Korzep*, 172 Ariz. at 540 (holding that A.R.S. § 13-411(A) "requires an objective, third person measure of the reasonableness of a defendant's preventive force").

¶16        Here, the prosecutor instructed the grand jury on the proper objective standard of reasonableness.  He correctly explained that under § 13-403(1) the grand jury would have to determine whether Cespedes' use of force was "reasonable under the circumstances."  This instruction was not limited to Cespedes' subjective beliefs, nor was it based on the subjective beliefs of those who believe in corporal punishment.

**D.**

¶17        Finally, Cespedes argues that the prosecutor's instruction regarding child abuse prevented the grand jury from considering his justification defense.  According to Cespedes, the prosecutor advised the grand jurors that, in determining whether he committed child abuse, they were not required to consider whether his conduct was justified under § 13-403(1).

¶18        The prosecutor provided the following instruction regarding child abuse:

> [Section] 13-3623 is our child abuse statute[]. I'm going to read it and then explain it. . . . So Subsection A is going to be dealing with only under circumstances likely to produce death or serious physical injury. If it is not a circumstance likely to produce death or serious physical injury, you're going to drop to Subsection B. Okay? But the language is otherwise exactly the same.

> Any person who causes a child or vulnerable adult to suffer physical injury or, having the care, custody of a child or vulnerable adult, who causes or permits the person or health of the child or vulnerable adult to be injured or who causes or permits a child or vulnerable adult to be placed in a situation where the person or health of the child or vulnerable adult is endangered is guilty of an offense . . . .

> So the first line of the statute says any person who causes the child or vulnerable adult to suffer physical injury. So if you're talking about physical injuries that happened, you don't care what the relationship of that person is to the child.

¶19        The prosecutor did not misstate the law. Section 13-3623(B) states, in relevant part, that "any person who causes a child . . . to suffer physical injury" is guilty of child abuse. Thus, a determination of guilt under this section does not require proof that the defendant is a parent or guardian of the minor child. *Id.* Additionally, the prosecutor neither instructed nor suggested to the grand jury that justification could not be raised as a defense to child abuse.

## CONCLUSION

¶20        Because the prosecutors correctly explained the law regarding justification to the grand jury, Cespedes was not denied a substantial procedural right. Accordingly, we affirm.

JUSTICE LOPEZ, joined by JUSTICE BRUTINEL, and JUSTICE BOLICK, dissenting:

¶21            I respectfully dissent, not because the majority misconstrues the legal standard for instruction of grand juries on justification defenses, but rather, because I disagree with the majority's conclusion that the instruction in this case comports with the relevant standard.

¶22            Cespedes spanked his thirteen-year-old son, J.C., with a belt, leaving bruises, as punishment for playing video games without his permission. J.C. subsequently "borrowed" and used his father's credit card without permission and, fearing similar consequences, reported to his school that Cespedes previously had spanked him. A grand jury indicted Cespedes on two counts of child abuse under circumstances not likely to produce death or serious injury, A.R.S. § 13-3623(B)(1). During the grand jury presentation, the prosecutor offered Cespedes' statement that he had, on prior occasions, used corporal punishment to discipline J.C. The grand jury indicted Cespedes on a nine-to-five vote.

¶23            "Arizona grand juries, like their federal counterparts, were . . . designed to act as a 'vital check against the wrongful exercise of power by the State and its prosecutors.'" *McKaney v. Foreman*, 209 Ariz. 268, 275 ¶ 31 (2004) (citations omitted). Accordingly, we recognize "the grand jury's unique role in bringing to trial those who may be guilty and clearing the unjustly accused," and the commensurate need to ensure that "the determinations made by that body are informed, objective and just." *Crimmins v. Superior Court*, 137 Ariz. 39, 41 (1983). "[A]ccurate instructions to the grand jury concerning an affirmative defense may be just as essential to avoiding needless prosecution as instruction on one of the elements of the crime." *Francis v. Sanders*, 222 Ariz. 423, 427 ¶ 16 (App. 2009).

¶24            "In a criminal proceeding, error 'is harmless if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the [outcome]. We must be confident beyond a reasonable doubt that the error had no influence on the jury's judgment.'" *Maretick v. Jarrett*, 204 Ariz. 194, 198 ¶ 15 (2003) (applying harmless error standard in the context of grand jury proceedings) (citations omitted); *Bashir v. Pineda*, 226 Ariz. 351, 356 (App. 2011) (same). "In determining whether the error was harmless, we

consider each misstep in context." *Maretick*, 204 Ariz. at 198 (citing *Crimmins*, 137 Ariz. at 42).

**¶25** Cespedes argues he was denied a substantial procedural right because the prosecutor misstated the law regarding justification in the following instruction to the grand jury during the empanelment:

> Justification defenses that we're going to get into now, the legislature changed this. . . . Now, all justification statutes are no longer affirmative defenses. So if somebody alleges that then, as you see, the state must prove beyond a reasonable doubt the defendant did not act with justification. So once that is raised—*and, again, you're not going to be making those decisions—although—well, you're going to be making—you certainly can make a decision as to whether someone was justified in committing the crime,* but in terms of when you go to trial, a person can allege that they were acting in self-defense and then the state has to disprove that beyond a reasonable doubt. That will become clear to you as we go now to Chapter 4, which we're going to spend the rest of the morning on.
>
> .    .    .
>
> So when is somebody justified in using physical force under 403? A parent, guardian, teacher or other person entrusted with the care and supervision of minors or incompetent persons can use reasonable and appropriate physical force upon that person when and to the extent reasonably necessary and appropriate to maintain discipline.

(emphasis added); A.R.S. § 13-403(1) ("The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal" where a parent uses "reasonable and appropriate physical force . . . when and to the extent reasonably necessary and appropriate to maintain discipline.").

**¶26** Here, the State's justification instruction, viewed as a whole, failed to adequately and properly instruct the grand jury for two reasons. First, the prosecutor, perhaps unnecessarily, attempted to distinguish the roles of a trial jury and a grand jury with respect to the justification defense. As a result, he conflated the roles of the trial and grand juries and initially

and erroneously informed the grand jury that it was "not going to be making [] decisions" on justification, and his attempt to clarify the misstatement was ambiguous and confusing. Second, and perhaps of even greater consequence, the prosecutor's clarification that the grand jury "*can* make a decision as to whether someone was justified in committing the crime" erroneously implied that a justification determination was permissive rather than mandatory.

¶27　　The justification instruction was not a model of clarity. In fact, in the State's response to Cespedes' petition for review, it wrote that "the State pointed out during instruction that *deciding whether justification excuses criminal liability does not fall within the purview of the grand jury* who are tasked with deciding whether there is probable cause to indict a defendant for committing a crime." Although the State later re-characterized its initial description of the grand jury transcript in a supplemental brief as "an unartful summary," it illustrates the point: the instruction, at best, is ambiguous and confusing. If the State's appellate counsel, afforded the advantage of legal training and the relative luxury of time to reflect upon a written transcript, is left confused by the instruction, I cannot conclude that the flawed justification instruction did not also influence the grand jury's determination.

¶28　　After the prosecutor's erroneous comment that the grand jury was "not going to be making [] decisions" about justification, he clarified that it "*can* make a decision as to whether someone was justified in committing the crime." The instruction misstates the law; contrary to the clarification, the grand jury *must* decide whether a defendant's actions were justified. In a case, like this one, where evidence triggers a justification instruction, a lawful probable cause determination requires a grand jury to find that an action was not justified because a justified action is not a crime. *See* A.R.S. § 13-205 ("Justification defenses describe conduct that, if not justified, would constitute an offense but, if justified, does not constitute criminal or wrongful conduct."); A.R.S. § 21-413 ("The grand jury shall return an indictment . . . if . . . it is convinced that there is probable cause to believe the person under investigation is guilty of such public offense."). In other words, although a grand jury *can conclude* that a defendant's actions were justified (and decline to indict), it *must consider* whether justification rendered the actions lawful before indicting a defendant.

¶29      The prosecutor seems to have acknowledged this nuance when he first told the grand jury, "well, you're going to be making—[a justification decision]," before changing course and erroneously instructing that it "can make a decision" on justification. This subtle juxtaposition communicated to the grand jury that it had a choice whether to decide the justification defense. Given Cespedes' contention that he was justified in disciplining J.C., the grand jury could not have properly returned an indictment without affirmatively considering and rejecting his justification defense. Because the instruction improperly suggested that its justification determination was permissive rather than mandatory, it effectively invited the grand jury to ignore its obligation to consider Cespedes' justification defense before returning an indictment.

¶30      The majority emphasizes that, after the prosecutor provided the contradictory and muddled justification instruction, he informed the grand jury that "[w]hat's reasonable and what's unreasonable is going to be your decision to make." ¶¶ 8, 13. Although this fact makes this a close case, it does not eliminate the pervasive confusion concerning the justification instruction infused at the inception of the grand jury process. If anything, it underscores the ambiguity and contradictions concerning the grand jury's charge on justification: "*you're not going to be making those decisions*" to "*although—well, you're going to be making*" to "*you certainly can make a decision*" and "*[w]hat's reasonable and what's unreasonable is going to be your decision to make.*"

¶31      There is no evidence that the State intentionally denied Cespedes his substantial procedural right to a fair and impartial grand jury hearing. To the contrary, the State introduced the relevant justification statute and otherwise met its obligation to present exculpatory evidence. But that does not absolve the State of its duty to carefully and properly instruct the grand jury on the relevant law, including how to apply it. The State concedes, as it must, that Cespedes was entitled to a justification instruction; the instruction here went to the heart of the case. The State's presentation of the justification instruction failed to adequately explain how the grand jury should apply the law, however, because it initially informed the grand jury that it may not consider justification and then incorrectly suggested that a justification determination was permissive rather than mandatory. The grand jury, in the context of this instructional error,

indicted Cespedes on a nine-to-five vote, the minimum number of votes required for indictment.  *See* Ariz. R. Crim. P. 12.7(a).

**¶32**        "For while in theory a trial provides the defendant with a full opportunity to contest and disprove the charges against him, in practice, the handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo." *United States v. Serubo*, 604 F.2d 807, 817 (3d Cir. 1979) (cited with approval in *Crimmins*, 137 Ariz. at 44 (Feldman, J., specially concurring)).  Because I cannot conclude, beyond a reasonable doubt, that the flawed instruction did not influence the grand jury's determination, I would remand for a redetermination of probable cause.  Accordingly, I respectfully dissent.